[No. C045316. Third Dist. Aug. 25, 2004.]

AZTECA CONSTRUCTION, INC., Plaintiff and Appellant, v.
ADR CONSULTING, INC., Defendant and Respondent.

**COUNSEL**

Sheuerman, Martini & Tabari and Alan L. Martini for Plaintiff and Appellant.

Law Offices of George R. Gore and George R. Gore for Defendant and Respondent.

## OPINION

**BUTZ, J.**—This case requires us to resolve a conflict between the rules of the American Arbitration Association (AAA) and the provisions of the California Arbitration Act (the Act) (Code Civ. Proc., § 1280 et seq.)[1] pertaining to the disqualification of a proposed neutral arbitrator based on pre-arbitration disclosures that might affect his or her impartiality.

The parties here agreed to private arbitration in accordance with the AAA's then entitled "Construction Industry Dispute Resolution [Rules and] Procedures" (hereafter AAA Rules). Those rules included a provision which stated that where one party objects to the continued service of an arbitrator, the AAA shall decide whether the arbitrator should be disqualified, and that its determination of the issue shall be conclusive.

On the other hand, the Act permits either party uncomfortable with the disclosures of any proposed arbitrator to disqualify him or her within 15 days after receiving the disclosure statement. (§ 1281.91, subd. (b)(1).) If the arbitrator fails to disqualify himself or herself upon timely demand, there is a drastic remedy—vacation of the award. (§ 1286.2, subd. (a)(6)(B).)

In this case, plaintiff Azteca Construction, Inc. (Azteca) demanded disqualification of the proposed arbitrator within 15 days after receiving his disclosure statement. Acting pursuant to its internal rules, the AAA determined that there was no good cause for disqualification, affirmed the appointment of the arbitrator, and the arbitration proceeded to its conclusion.

Azteca filed a petition to vacate the arbitration award for noncompliance with relevant provisions of the Act. The trial court ruled that Azteca had waived these provisions by agreeing to AAA arbitration, and more specifically the rule giving the AAA conclusive authority over challenges to the arbitrator's neutrality.

The trial court erred. The provisions for arbitrator disqualification established by the California Legislature may not be waived or superseded by a private contract. The arbitrator's refusal to disqualify himself following Azteca's timely demand rendered the award subject to vacatur. We shall reverse with directions.

## PROCEDURAL AND FACTUAL BACKGROUND

This case involves a dispute between Azteca and defendant ADR Consulting, Inc. (ADR Consulting) arising out of a written contract whereby

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

ADR Consulting agreed to provide consulting services to Azteca. The contract contained a clause that provided that any dispute arising out of the agreement "shall be resolved through the American Arbitration Association using the [AAA] Rules . . . ." At the time of the events in question, former rule R-20(b) of those rules (Rule R-20(b)) provided that "[u]pon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive."

In October 2002, ADR Consulting served a demand on Azteca for arbitration in accordance with the AAA Rules. Because the parties were unable to agree on a neutral arbitrator from the AAA list, the AAA proposed that Attorney Paul W. Taylor arbitrate the dispute. In compliance with section 1281.9,[2] Taylor submitted a disclosure statement, which was distributed to both sides on November 12, 2002.

Taylor's disclosure statement revealed that he had, within the past five years, served as a neutral arbitrator on matters in which George Gore (ADR Consulting's counsel) had represented one or more parties. Specifically, Taylor recalled only that "these matters have included administrative hearings on behalf of the University of California." Taylor also disclosed that he had a prior relationship with Gore in that in approximately 1985 and for about a year, the same construction company employed both him and Gore. Finally, a conflicts check run by the law firm to which Taylor was "of counsel" reported a case in which Azteca was listed as a potential adverse party to one of its clients; Taylor stated that he had no "personal recollection of any knowledge of this matter," nor had he made inquiry of the attorney at his firm responsible for handling it.

On November 13, 2002, Azteca, through its vice-president, wrote to the AAA formally objecting to Taylor's proposed appointment and requesting his removal as arbitrator, based on his disclosed relationship with Gore. After conducting an investigation, the AAA determined that Taylor should not be disqualified, and notified the parties on November 27, 2002, that it had reaffirmed Taylor's appointment as arbitrator.

An arbitration hearing was conducted and on March 20, 2003, Taylor rendered an interim award, ordering Azteca to pay ADR Consulting $39,140, plus the costs of the arbitration.

---

[2] Section 1281.9, subdivision (a), requires disclosure of "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial," including specified matters relating to the arbitrator's present arrangements or past relationships with the parties or their attorneys.

Counsel for Azteca then wrote to Taylor, requesting that he forthwith disqualify himself as arbitrator, reminding him that Azteca had served notice of his disqualification on November 13, 2002. Responding to the letter, the AAA reasserted its authority under its Rule R-20(b) to adjudicate any objection ·to Taylor's continued service. Taylor issued a final award on April 21, 2003.

Azteca filed a petition to vacate the award, claiming that Taylor was required to disqualify himself upon timely receipt of Azteca's objection under section 1281.91, subdivisions (b)(1) and (d), and the California Ethics Standards for Neutral Arbitrators in Contractual Arbitration, adopted by the Judicial Council. Former stds. 8(a)(2) (now std. 10(a)(2)) & 10(b) (now std. 12(b)) (hereafter Ethics Standards).)

The trial court denied the petition. Although it found that Azteca submitted a timely demand for disqualification prior to the arbitration, the court ruled that Azteca had waived the right to disqualify Taylor under the Act by agreeing to arbitration in conformance with the AAA Rules. The court indicated that were it to consider the matter of the AAA's refusal to disqualify Taylor de novo, it would conclude that there was nothing in Taylor's disclosure statement that required disqualification.

## DISCUSSION

### I. *Recent Revisions to the Act and the Present Case*

In 2001, the Legislature significantly revised the disclosure requirements and procedures for disqualifying arbitrators pursuant to private or contractual arbitration. (§ 1281.9, as amended by Stats. 2001, ch. 362, §§ 4–8.) Section 1281.9, subdivision (a), was amended to require an appointed arbitrator's disclosure of any fact that might reasonably lead a person to *doubt* his or her ability to be impartial.[3] The Judicial Council was directed to adopt "ethical standards for all neutral arbitrators effective July 1, 2002" (§ 1281.85) and the Ethics Standards, which now appear in division VI of the Appendix to the California Rules of Court, were made applicable to proposed arbitrators. (§ 1281.9, subd. (a)(2).) Section 1281.91 was also added, clarifying the procedure for party-initiated disqualification of proposed arbitrators. (Stats. 2001, ch. 362, § 6.)

■ Under the Act, proposed neutrals have 10 days from the date of service of their proposed nomination or appointment to make the disclosures

---

[3] Section 1281.9, subdivision (a)(1), was further amended in 2002 to add disclosure requirements related to prospective employment or compensated service as a neutral arbitrator. (Stats. 2002, ch. 1094, § 2.)

required by law. (§ 1281.9, subd. (b).) The parties then have 15 days to file a notice of disqualification either for failure to comply with disclosure duties (§ 1281.91, subd. (a)), or if full disclosure was made, based on the facts actually disclosed. (§ 1281.91, subd. (b)(1).)

Until Azteca demanded Taylor's removal, the arbitrator selection process here conformed in all aspects to the Act. By letter of November 12, 2002, the AAA selected Taylor as the proposed arbitrator and attached his disclosure statement, in ostensible compliance with section 1281.9.[4]

Taylor's statement listed several disclosures reflecting on his neutrality, including a prior working relationship with Gore, the fact that Azteca was a potential adverse party to a client of a law firm with which Taylor was associated, and the fact that Taylor had previously arbitrated cases in which Gore represented one or more parties.

Section 1281.91, subdivision (b)(1), provides that a proposed arbitrator who complies with his or her disclosure obligations under section 1281.9, *"shall be disqualified on the basis of the disclosure statement"* if either party serves a notice of disqualification within 15 days. (Italics added.) This subdivision confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality. (See also Ethics Standards, former std. 10(a)(2) [now std. 12(a)(2)].) There is no good faith or good cause requirement for the exercise of this right, nor is there a limit on the number of proposed neutrals who may be disqualified in this manner. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2003) ¶ 7:238, p. 7-49 (Knight).)[5] As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute.

Azteca's November 13, 2002 letter demanding Taylor's removal was based on one of his disclosures and was served within 15 days as required by statute. Moreover, the trial court made the unchallenged finding that the letter was a "timely demand for disqualification." Thus, if the provisions of the Act had been followed, Taylor's disqualification should have been automatic.

---

[4] The letter read in part: "Dear Parties: [¶] In accordance with the California Arbitration Law (C.C.P. Section 1281.9), fully executed Arbitrator Disclosure form submitted by Paul W. Taylor is enclosed for your review. [¶] If you have objections to the appointment of the proposed Arbitrator, it must be factual in nature and/or based upon the Arbitrator's disclosure form, and it must be submitted to the Association in writing within fifteen days from the date of this letter. Absent our receipt of a proper notice of disqualification within the time specified, the appointment of the proposed Arbitrator will be confirmed."

[5] Where the arbitrator is appointed by *the court* (see § 1281.6), each party is limited to only one challenge without cause (§ 1281.91, subd. (b)(2)). This was not such a case.

However, Taylor did not disqualify himself, nor did the AAA require his removal. Instead, the AAA proceeded to apply its own rule R-20(b), which gave it the sole right to rule on any objection to the continued service of an arbitrator. Overruling Azteca's demand for removal, the AAA reaffirmed Taylor as arbitrator and the arbitration proceeded to its conclusion. The trial court upheld this procedure because "[w]hatever rights [Azteca] had to challenge the arbitrator under California law, it agreed to waive or alter those rights by agreeing to abide by the AAA rules."

■ The correctness of the trial court's ruling is a legal issue involving statutory construction and the ascertainment of legislative intent, which we review de novo. (*Spielholz v. Superior Court* (2001) 86 Cal.App.4th 1366, 1371 [104 Cal.Rptr.2d 197].)

### II. *Did Azteca Waive Its Right to Challenge the Arbitrator Under the Act?*

In recent times, there has been a "rapid expansion" of private or contractual arbitration as a mechanism for dispute resolution. (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 985 [12 Cal.Rptr.3d 287, 88 P.3d 24].) Although " '[t]he scope of arbitration is . . . a matter of agreement between the parties' [citation], and ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission" ' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 8 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*)), the process has historically been subject to extensive legislative supervision. (*Id.* at pp. 25–28.)

The Act "represents a comprehensive statutory scheme regulating private arbitration in this state. (§ 1280 et seq.)" (*Moncharsh, supra,* 3 Cal.4th at p. 9.) Section 1281 and following provisions that "set forth procedures for the enforcement of agreements to arbitrate ([Code Civ. Proc.,] §§ 1281.2–1281.95), establish rules for the conduct of arbitration proceedings except as the parties otherwise agree (*id.,* §§ 1282–1284.2), describe the circumstances in which arbitrators' awards may be judicially vacated, corrected, confirmed, and enforced (*id.,* §§ 1285–1288.8), and specify where, when, and how court proceedings relating to arbitration matters shall occur (*id.,* §§ 1290–1294.2)." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830 [88 Cal.Rptr.2d 366, 982 P.2d 229].)

Over the years, the Legislature has revised and refined the standards for judicial oversight of arbitration awards. "The law has . . . evolved from its common law origins and moved towards a more clearly delineated scheme rooted in statute." (*Moncharsh, supra,* 3 Cal.4th at p. 26.)

As the California Supreme Court noted in *Moncharsh*, the Legislature has severely restricted judicial interference in the *merits* of an arbitrator's decision. (*Moncharsh, supra,* 3 Cal.4th at pp. 10–11.) Arbitrators are not bound by rules of law, but may base their decisions on broad principles of justice and equity. (*Id.* at p. 10.) With narrow exceptions, the courts are not permitted to review the validity of an arbitrator's reasoning or the sufficiency of the evidence to support the award. (*Id.* at p. 11; *Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730, 735–737 [115 Cal.Rptr.2d 810] (*Crowell*).)

Precisely because arbitrators wield such mighty and largely unchecked power, the Legislature has taken an increasingly more active role in protecting the fairness of the process. (*Moncharsh, supra,* 3 Cal.4th at pp. 12–13.) In 1994, section 1281.9 was added, enumerating required disclosures for proposed arbitrators. (Stats. 1994, ch. 1202, § 1, p. 7420.) While awards have traditionally been subject to vacatur if procured by fraud, corruption or misconduct of the arbitrator or if the arbitrator exceeded his or her powers (§ 1286.2, subd. (a)(1), (2), (3) & (4)), in 1997, the Legislature added as a ground for annulment of an award that the arbitrator "*was subject to disqualification upon grounds specified in Section 1281.9* but *failed upon receipt of timely demand to disqualify himself or herself* as required by that provision." (*Crowell, supra,* 95 Cal.App.4th at p. 737, quoting former § 1286.2, subd. (f), as amended by Stats. 1997, ch. 445, § 4, italics added.)[6]

The 2001 legislation arose out of a perceived lack of rigorous ethical standards in the private arbitration industry.[7] Cosponsored by the Governor and the Judicial Council, the bill sought to provide "basic measures of consumer protection with respect to private arbitration, such as minimum ethical standards and remedies for the arbitrator's failure to comply with existing disclosure requirements." (Bill Analysis, *supra,* p. 1.) Recent developments thus evince an unmistakable legislative intent to oversee and enforce ethical standards for private arbitrators.

---

[6] This provision now appears in section 1286.2, subdivision (a)(6). (Stats. 2001, ch. 362, § 7.)

[7] According to an Assembly Committee analysis prior to the 2001 enactment of Senate Bill No. 475, "the growing use of private arbitrators—including the imposition of mandatory, pre-dispute binding arbitration contracts in consumer and employment disputes—has given rise to a largely unregulated private justice industry. While lawyers who act as arbitrators under the judicial arbitration program are required to comply with the Judicial Code of Ethics, arbitrators who act under private contractual arrangements are, surprising to many, currently not required to do so. . . . Because these obligations do not attach to private arbitrators, parties in private arbitrations are not assured of the same ethical standards as they are entitled to in the judicial system." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 475 (2001–2002 Reg. Sess.) as amended Aug. 20, 2001, p. 4 [<http://www.leginfo.ca.gov> (as of Aug. 25, 2004)] (hereafter Bill Analysis).)

ADR Consulting acknowledges that Taylor was subject to the *disclosure* provisions of the Act, but contends that when it comes to the mechanism for disqualification, the trial court properly ruled that Rule R-20(b) took precedence over the statutory scheme, based on freedom of contract principles. ADR Consulting argues that the trial court properly gave effect to the parties' voluntary contractual limitation on their statutory disqualification rights, citing the basic maxim in Civil Code section 3513, that a party is free to waive a statutory provision intended for his benefit.

■ The full text of Civil Code section 3513 provides: "Anyone may waive the advantage of a law intended solely for his benefit. *But a law established for a public reason cannot be contravened by a private agreement.*" (Italics added.) As our state Supreme Court pointed out, a literal construction of this statute would be unreasonable, for "it is difficult to conceive of a statutory right enacted *solely* for the benefit of private individuals that does not also have an incidental public benefit." (*Bickel v. City of Piedmont* (1997) 16 Cal.4th 1040, 1049, fn. 4 [68 Cal.Rptr.2d 758, 946 P.2d 427].) Therefore, a party may waive a statutory right where its " 'public benefit . . . is merely incidental to [its] primary purpose,' " but a waiver is unenforceable where it would " 'seriously compromise any public purpose that [the statute was] intended to serve.' " (*DeBerard Properties, Ltd. v. Lim* (1999) 20 Cal.4th 659, 668–669 [85 Cal.Rptr.2d 292, 976 P.2d 843], quoting *Bickel*, at pp. 1049–1050.) Stated another way, Civil Code section 3513 prohibits a waiver of statutory rights where the "public benefit [of the statute] is one of its primary purposes." (*DeBerard*, at p. 669.)

Courts have applied this principle, either expressly or by implication, to annul or restrict contractual arbitration provisions that run afoul of statutory rights that benefit the public. For example, in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), the California Supreme Court held that an arbitration agreement could not be used as a vehicle to waive statutory rights created by the California Fair Employment and Housing Act (FEHA). (*Armendariz*, at p. 101.) Thus, while it was not unlawful *per se* for the parties to agree to arbitrate FEHA claims, the rules of that arbitration must be judicially scrutinized to ensure that the employee is effectively able to vindicate his or her statutory rights in the arbitral forum. (*Id.* at pp. 102–103.) Relying on Civil Code section 3513, as well as Civil Code section 1668 (*Armendariz*, at p. 100), the high court invalidated or limited certain provisions of an agreement to arbitrate FEHA claims. (*Id.* at pp. 103–113.)

In *Crowell, supra,* 95 Cal.App.4th 730, the court voided a provision in an arbitration agreement that purported to expand judicial review of the arbitrator's findings of fact and conclusions of law beyond that provided by the Act.

The court found that the clause was inconsistent with the statutory scheme designed to ensure finality of the arbitrator's decision. (*Id.* at pp. 735–739.)

And in *Alternative Systems, Inc. v. Carey* (1998) 67 Cal.App.4th 1034 [79 Cal.Rptr.2d 567], a case with a fact pattern closest to that here, the court was confronted with an attorney-client fee agreement, which provided that all fee disputes were to be arbitrated by the AAA in accordance with its rules and procedures. (*Id.* at p. 1038.) The AAA's method of dispute resolution conflicted with the client's rights under the Mandatory Fee Arbitration (MFA) statutes. (Bus. & Prof. Code, § 6200 et seq.) Citing Civil Code section 3513, *Carey* held that MFA, which was enacted for the public benefit, preempted the AAA arbitration clause in the contract. (*Carey,* at pp. 1042–1044.)

■ It is our view that Rule R-20(b) must yield to the disqualification scheme set forth in sections 1281.9 and 1281.91, for a number of reasons. First, there is no doubt that these statutes were enacted primarily for a public purpose. As we have seen, the Legislature has gone out of its way, particularly in recent years, to regulate in the area of arbitrator neutrality by revising the procedures relating to the disqualification of private arbitrators and by adding, as a penalty for noncompliance, judicial vacation of the arbitration award. The statement of purpose set forth in the Ethics Standards, formulated under statutory mandate, recites: "These standards are adopted under the authority of Code of Civil Procedure section 1281.85 and *establish the minimum standards of conduct for neutral arbitrators who are subject to these standards*. They are intended to guide the conduct of arbitrators, to inform and *protect participants in arbitration*, and to *promote public confidence in the arbitration process*." (Ethics Standards, std. 1(a), italics added.)

■ Second, there is a " 'fundamental distinction between contractual rights, which are created, defined, and subject to modification by the same private parties participating in arbitration, and statutory rights, which are created, defined, and subject to modification only by [the Legislature] and the courts . . . .' " (*Armendariz, supra,* 24 Cal.4th at p. 101, quoting *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 323 U.S. App. D.C. 133 [105 F.3d 1465, 1476].) While the parties may be free to contract among themselves for alternative methods of dispute resolution, such contracts would be valueless without the state's blessing. Because it imbues private arbitration with legal vitality by sanctioning judicial enforcement of awards, the state retains ultimate control over the "structural aspect[s] of the arbitration" process. (*Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183, 1190 [117 Cal.Rptr.2d 842].) The critical subject of arbitrator neutrality is a structural aspect of the arbitration and falls within the Legislature's supreme authority.

 Finally, the neutrality of the arbitrator is of such crucial importance that the Legislature cannot have intended that its regulation be delegable to the unfettered discretion of a private business. The California Supreme Court has termed the requirement of a neutral arbitrator "essential to ensuring the integrity of the arbitration process." (*Armendariz, supra,* 24 Cal.4th at p. 103, citing *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825 [171 Cal.Rptr. 604, 623 P.2d 165].) "Participants who agree to *binding* arbitration are giving up constitutional rights to a jury trial and appeal. [Statutory] [d]uties of disclosure and disqualification are designed to ensure an arbitrator's impartiality." (Knight, *supra,* ¶ 7:13, p. 7-7.) As the Court of Appeal stated in *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085 [40 Cal.Rptr.2d 700] (*Britz*): "[E]ven though state and federal policy favors private arbitration and the AAA is certainly a respected forum for such arbitration, AAA nevertheless is a business enterprise 'in competition not only with other private arbitration services but with the courts in providing—in the case of private services, selling—an attractive form of dispute settlement. It may set its standards as high or as low as it thinks its customers want.' " (*Id.* at p. 1102, quoting *Merit Ins. Co. v. Leatherby Ins. Co.* (7th Cir. 1983) 714 F.2d 673, 681.) Only by adherence to the Act's prophylactic remedies can the parties have confidence that neutrality has not taken a back seat to expediency.[8]

We conclude Azteca could not, by agreeing to submit to arbitration before the AAA, waive its statutory rights to disqualify an arbitrator under the methods set forth by the Act. In resolving Azteca's objection to the proposed arbitrator, the AAA was required to follow section 1281.9 *and* section 1281.91.

### III. *Application of the Act to Taylor's Disqualification*

Under section 1281.91, Taylor should have been disqualified before the arbitration began since, as discussed in part I, *ante,* Azteca properly exercised its right to remove him within 15 days of service of his disclosure statement.

---

[8] In *Britz, supra,* 34 Cal.App.4th 1085, a party moved to disqualify the arbitrator for cause in the midst of the proceeding after learning of a potential conflict of interest. (*Id.* at p. 1096.) The AAA denied the motion, acting under the AAA Commercial Arbitration Rules, former "rule [R-]19," a rule very similar to Rule R-20(b) (of the AAA Construction Rules), giving the organization "conclusive" authority to rule on objections to the arbitrator. (*Britz,* at pp. 1098–1099.) *Britz* held that "a trial court considering a petition to confirm or vacate an arbitration award is required to determine, de novo, whether the circumstances disclose a reasonable impression of arbitrator bias, when that issue is properly raised by a party to the arbitration." (*Id.* at p. 1102.)

*Britz* did not involve the issue we face, i.e., the applicability of statutes requiring a proposed arbitrator to disqualify himself upon demand of one party. However, *Britz* is consistent with our conclusion that parties cannot contractually override provisions of the Act designed to protect the fairness of the arbitration process.

Moreover, as Azteca argued below, there was a second reason why Taylor should have stepped down. Section 1281.9, subdivision (a)(2), requires proposed arbitrators to make all disclosures required by the Ethics Standards. In November 2002, former standard 10(b) provided in relevant part: "[W]ithin [10 calendar days of service of notice of the proposed nomination or appointment], a proposed arbitrator must disclose whether or not he or she will entertain offers of employment or new professional relationships in any capacity other than as a lawyer, expert witness, or consultant from a party, a lawyer in the arbitration, or a lawyer or law firm that is currently associated in the private practice of law with a lawyer in the arbitration while that arbitration is pending, including offers to serve as a dispute resolution neutral in another case. *A party may disqualify the arbitrator based on this disclosure by serving a notice of disqualification in the manner and within the time specified in Code of Civil Procedure section 1281.91[, subdivision] (b).*" (Ethics Standards, former std. 10(b) [now std. 12(b)], italics added.)

Mirroring the language of this standard, Taylor wrote in his disclosure statement that he reserved the right to entertain offers of employment or new professional relationships with a party or lawyer for a party in this case while the arbitration was pending. Thus, Azteca's timely demand triggered Taylor's automatic disqualification under former Ethics Standards, standard 10(b) [now standard 12(b)].

Section 1286.2 provides that the court "*shall* vacate the award if the court determines any of the following: [¶] . . . [¶] (6) An arbitrator making the award . . . (B) was subject to disqualification upon grounds specified in Section 1281.91 *but failed upon receipt of a timely demand to disqualify himself or herself as required by that provision.*" (Italics added.) Since, as we have concluded, Taylor's pre-arbitration disqualification was mandatory, the award to ADR Consulting must be vacated.

We need not express an opinion on the correctness of the AAA's refusal to remove Taylor if viewed as a ruling upon a challenge for cause. Under the circumstances here, Azteca had no independent burden to demonstrate that a reasonable person would doubt Taylor's capacity to be impartial. (Compare §§ 1281.91, subd. (d), 170.1, subd. (a)(6)(C); *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 926 [20 Cal.Rptr.2d 834].) The Legislature has already determined that any of the matters required to be disclosed by section 1281.9, subdivision (a), necessarily satisfies that standard. (See*International Alliance of Theatrical Stage Employees, etc. v. Laughon* (2004) 118 Cal.App.4th 1380, 1386–1387 [14 Cal.Rptr.3d 341].) Azteca's demand for disqualification of a proposed neutral arbitrator therefore had the same practical effect as a timely peremptory challenge to a superior court judge under section

170.6—disqualification is automatic, the disqualified judge loses jurisdiction over the case and any subsequent orders or judgments made by him or her are void. (*Lawrence v. Superior Court* (1988) 206 Cal.App.3d 611, 615–616 [253 Cal.Rptr. 748]; *Brown v. Swickard* (1985) 163 Cal.App.3d 820, 824 [209 Cal.Rptr. 844].)

## DISPOSITION

The order denying Azteca's petition to vacate the arbitration award is reversed with directions to enter a new order granting the petition. Azteca shall recover its costs on appeal. (Cal. Rules of Court, rule 27(a).)

Blease, Acting P. J., and Morrison, J., concurred.

On September 9, 2004, the opinion was modified to read as printed above.