Filed 2/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| HARRY ROUSSOS et al., | B293358 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BS170767) |
| v. | |
| THEODOSIOS ROUSSOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge. Reversed and remanded with directions.

Nossaman, Jennifer L. Meeker and Maya G. Hamouie for Defendant and Appellant.

RMO, Scott E. Rahn, Sean D. Muntz and David G. Greco for Theocharis Roussos as Amicus Curiae on behalf of Defendant and Appellant.

Kesselman Brantly Stockinger, S.V. Stuart Johnson and Ryan Davis for Plaintiffs and Respondents.

Theodosios (Ted) Roussos appeals from a judgment confirming an arbitration award removing the managing director

of two corporations, owned by Ted and his brother Harry Roussos as cotrustees of two trusts, and appointing the director proposed by Harry.[1]  Ted contends the arbitration award must be vacated because of the arbitrator's refusal to recuse himself after Ted timely served his disqualification notice.  Harry contends Ted waived his right to object to the arbitrator because five years earlier the parties had agreed the specified arbitrator would have binding authority to arbitrate all issues.  However, the arbitrator was still a "proposed neutral arbitrator" for the present arbitration under Code of Civil Procedure sections 1281.9 and 1281.91,[2] and under section 1281.91, subdivision (b)(1), the arbitrator was required to disqualify himself upon Ted's timely service of a notice of disqualification.  We conclude the parties cannot contract away California's statutory protections for parties to an arbitration, including mandatory disqualification of a proposed arbitrator upon a timely demand.  We reverse and remand.[3]

---

[1]    Because the Roussos family members share the same last name, we refer to them by their first names to avoid confusion.

[2]    Further statutory references are to the Code of Civil Procedure.

[3]    Ted also contends on appeal the arbitration agreement, entered in 2012, did not cover the parties' 2016 disputes; the signatures on the arbitration agreement were not properly authenticated; and Harry and his wife Christine Roussos failed to join indispensable parties.  Because we reverse based on the required disqualification of the arbitrator, we do not address the other issues.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Trusts and Business Entities*

Harry and Ted are brothers and cotrustees of the S.M.B. Investor Associates Irrevocable Trust (SMB Trust) and the O.F. Management Irrevocable Trust (OF Trust). As cotrustees of the two trusts, Harry and Ted had management roles and financial interests in multiple interrelated companies (the Roussos entities). As cotrustees of the SMB Trust, Harry and Ted held ownership interests in Dazum Limited (Dazum), Velnor Overseas Ltd. (Velnor), S.M.B. Management, Inc. (SMB Management), and S.M.B. Investor Associates, L.P. (SMB LP). As cotrustees of the OF Trust, they held ownership interests in Fenbe, Ltd. (Fenbe), Kelroad International, Inc. (Kelroad), Liro, Inc. (Liro), and O.F. Enterprises Ltd., L.P. (OF LP). In 2017 OF LP owned two apartment buildings on Abbot Kinney Boulevard and Paloma Avenue in Venice and a third apartment building in Colton. Liro owned a vacant lot on Abbot Kinney Boulevard and an apartment building on Ocean Front Walk in Venice.

B.     *Harry and Christine's Demand for Arbitration and Motion To Compel Arbitration*

On August 31, 2017 Harry and his wife Christine Roussos demanded arbitration pursuant to a December 2012 arbitration agreement signed by Christine, Harry (individually and on behalf of OF LP and SMB LP), Ted (individually and on behalf of OF LP and SMB LP), and two individuals signing on behalf of Liro, Kelroad, Fenbe, Dazum, Velnor, and SMB Management. The arbitration agreement provided the parties "stipulate and agree not to contest that Judge John P. Shook will arbitrate all issues

3

with binding authority" over them. In their arbitration demand, Harry and Christine requested the appointment of a single director for Velnor, Dazum, Kelroad and Fenbe; a stay of any distribution of cash or sale of assets held by Liro, OF LP, and SMB Management; and an order requiring Sarah Daly, the director of Liro and SMB Management, to keep Harry, Ted, and other Roussos entities informed as to the business operations of Liro, SMB Management, SMB LP, and OF LP. According to the demand, the arbitrator (Judge Shook) had previously appointed Daly to serve as the director of SMB Management and Liro, but he did not appoint a director for Velnor, Dazum, Kelroad, or Fenbe. The demand also alleged Daly was acting inappropriately with respect to her role as director of SMB Management and Liro. Harry and Christine's demand for arbitration followed a prior arbitration in which the arbitrator ordered partition by sale of six properties held by OF LP, SMB LP, and Liro (the first arbitration).[4]

On September 8, 2017 Harry and Christine filed a petition to compel arbitration naming Ted, SMB LP, OF LP, SMB Management, and Liro as respondents after they objected to the arbitrator's jurisdiction to resolve the dispute.[5] On October 6 Harry and Christine filed a motion to compel arbitration, which the trial court granted on March 5, 2018. The trial court ordered the parties to "arbitrate the controversies between them,

[4]     The first arbitration is the subject of Ted's appeal in *Roussos v. Roussos* (Feb. 2, 2021, B293356) (nonpub. opn.).

[5]     Harry and Christine later dismissed SMB LP and OF LP from the petition.

4

including the entire Petition scope, in accordance with their agreement to arbitrate."

C.    *The Arbitrator's Disclosure and Ted's Notice of Disqualification*

On March 13, 2018 Judge Shook served on the parties a disclosure report that disclosed two matters in which he had served as an arbitrator:  (1) a March 2016 matter involving Ted, Harry, Christine, and the Roussos entities; and (2) the first arbitration involving Harry, Christine, and Ted resulting in a September 2016 arbitration award.  The cover letter to counsel stated, "[D]isclosures are being made for the prior sixty months pursuant to Code of Civil Procedure Sections 1281.6 and 1281.9."  The disclosure also provided, "To further comply with CCP section 1281.85 as adopted by the Judicial Council of California and effective as of July 1, 2002 *ARC* [(Alternative Resolution Centers)] makes the following disclosure: If selected as a neutral arbitrator the Arbitrator selected in the instant matter will entertain and accept offers of permitted employment or new professional relationships from parties, attorneys, or law firms involved in a case while this case is pending.  *ARC* will entertain offers of permitted employment or new professional relationships—for example, as a neutral arbitrator or mediator— from parties or attorneys involved in this case while this case is pending."  The letter concluded, "[I]t is the position of *ARC* that the foregoing constitutes a complete and thorough disclosure.  Proceeding to hearing in this matter shall be deemed acknowledgment of said disclosures and your acceptance of the arbitrator."

On March 22, 2018 Ted served a notice of disqualification of Judge Shook as the arbitrator based on the disclosure report pursuant to section 1281.91, subdivision (b).  Ted asserted the arbitrator's prior rulings and awards, as well as his relationships with Ted's prior attorney and Harry and Christine's attorney, could affect the arbitrator's neutrality.  The arbitrator denied Ted's disqualification request.

D.    *The Arbitration Award*

As part of the 2018 arbitration, Harry and Christine moved to remove and replace Daly as the director of SMB Management and Liro.  The arbitrator had appointed Daly on June 6, 2016 to serve as director of SMB Management and Liro upon Ted's nomination, but at the time of the 2018 arbitration both Harry and Ted sought her removal and replacement.  After a hearing, on March 30, 2018 the arbitrator revoked his prior appointment of Daly and removed her from her position as director of SMB Management and Liro.  The arbitrator set an evidentiary hearing to consider Harry's and Ted's nominations of individuals to serve as the director of the Roussos entities.

After a hearing, on May 18, 2018 the arbitrator in his final amended award appointed David Kaplan, Harry's choice of director, as the acting director for all of the Roussos entities.

E.    *The Trial Court's Confirmation of the Arbitration Award*

On June 6, 2018 Harry and Christine filed a petition and motion to confirm the amended arbitration award.  On June 18 Ted filed an answer to the petition, requesting the trial court vacate the award.  Ted also filed an opposition to the motion to confirm the amended arbitration award.  Ted contended the

6

award must be vacated because the arbitrator failed to disqualify himself upon timely receipt of Ted's notice of disqualification. Ted also argued Harry and Christine had not authenticated the arbitration agreement because Harry's declaration did not aver he saw an authorized agent of the Roussos entities sign the arbitration agreement; the arbitration agreement only covered the issues in dispute in 2012, not the present dispute; the arbitrator exceeded his powers by issuing an award that went beyond the arbitration demand (removal of Daly); and the award was void because the two trusts were not joined as indispensable parties.

On August 1, 2018 the trial court granted Harry and Christine's motion to confirm the amended arbitration award. On August 31 the court entered judgment confirming the amended arbitration award and ordering Ted to pay Harry and Christine $51,289.85 in attorneys' fees incurred to confirm the award. Ted timely appealed.

## DISCUSSION

A.  *The Disclosure and Disqualification Requirements of the Arbitration Act and Ethics Standards for Neutral Arbitrators*

"The California Arbitration Act (§ 1280 et seq.) 'represents a comprehensive statutory scheme regulating private arbitration in this state.'" (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380; accord, *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) "In 2001 the Legislature 'significantly revised the disclosure requirements and procedures for disqualifying arbitrators pursuant to private or contractual arbitration' and directed the

7

Judicial Council to adopt ethical standards for neutral arbitrators.  [Citations.]  'The 2001 legislation arose out of a perceived lack of rigorous ethical standards in the private arbitration industry.  Cosponsored by the Governor and the Judicial Council, the bill sought to provide "basic measures of consumer protection with respect to private arbitration, such as minimum ethical standards and remedies for the arbitrator's failure to comply with existing disclosure requirements."'" (*Honeycutt v. JP Morgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 921, fn. omitted (*Honeycutt*); accord, *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1162, 1165 (*Azteca*).)

"The statutory scheme, in seeking to ensure that a neutral arbitrator serves as an impartial decision maker, requires the arbitrator to disclose to the parties any grounds for disqualification.  Within 10 days of receiving notice of his or her nomination to serve as a neutral arbitrator, the proposed arbitrator is required, generally, to 'disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial.' (§ 1281.9, subd. (a).)"[6] (*Haworth v. Superior Court,*

---

[6] Section 1281.9, subdivision (a), provides in pertinent part, "In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following:  [¶]  (1)  The existence of any ground specified in Section 170.1 for disqualification of a judge. . . .  [¶]  (2)  Any matters required to be disclosed by the

*supra*, 50 Cal.4th at p. 381, fn. omitted; accord, *Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1361.)

Section 1281.91, subdivision (b), provides, "(1) If the proposed neutral arbitrator complies with Section 1281.9, the proposed neutral arbitrator shall be disqualified on the basis of the disclosure statement after any party entitled to receive the disclosure serves a notice of disqualification within 15 calendar days after service of the disclosure statement. [¶] (2) A party shall have the right to disqualify one court-appointed arbitrator without cause in any single arbitration, and may petition the court to disqualify a subsequent appointee only upon a showing of cause." As the Court of Appeal explained in *Azteca, supra*, 121 Cal.App.4th at page 1163, the disqualification provision "confers on both parties the unqualified right to remove a proposed arbitrator based on any disclosure required by law which could affect his or her neutrality. [Citation.] There is no good faith or good cause requirement for the exercise of this right, nor is there a limit on the number of proposed neutrals who may be disqualified in this manner. [Citation.] As long as the objection is based on a required disclosure, a party's right to remove the proposed neutral by giving timely notice is absolute." (Fn. omitted; accord, *Luce, Forward, Hamilton & Scripps, LLP v.*

_____

ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. . . . [¶] . . . [¶] (4) The names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any."

*Koch* (2008) 162 Cal.App.4th 720, 729 (*Luce*).) "[A party's] demand for disqualification of a proposed neutral arbitrator therefore ha[s] the same practical effect as a timely peremptory challenge to a superior court judge under section 170.6— disqualification is automatic, the disqualified judge loses jurisdiction over the case and any subsequent orders or judgments made by him or her are void." (*Azteca*, at pp. 1169-1170.) However, "disqualification based on a disclosure is an absolute right only when the disclosure is legally required." (*Luce*, at p. 735.)

Neutral arbitrators (proposed or serving) are also required to comply with the ethics standards for neutral arbitrators adopted by the Judicial Council. (§ 1281.85, subdivision (a); see Cal. Ethics Standards for Neutral Arbitrators in Contractual Arbitration (Ethics Standards).) Further, section 1281.85, subdivision (c), provides that "[t]he ethics requirements and standards of this chapter are nonnegotiable and shall not be waived." The Judicial Council adopted the ethics standards in 2002, explaining the purpose of the standards: "For arbitration to be effective there must be broad public confidence in the integrity and fairness of the process. Arbitrators are responsible to the parties, the other participants, and the public for conducting themselves in accordance with these standards so as to merit that confidence." (Ethics Standards, std. 1(b).) Standard 2(a)(1)(A) and (B) clarifies that the standards apply to arbitrators selected by the parties or appointed by the court.

Ethics Standards, standard 7(d) requires a "proposed arbitrator or arbitrator" to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial." Standard 7(d)

10

includes as examples of required disclosures a family, "significant personal," or attorney-client relationship with a party or lawyer in the arbitration; a financial or other interest in the outcome of the arbitration; prior service as an arbitrator for a party or lawyer; and knowledge of "disputed evidentiary facts concerning the proceeding." (Std. 7(d)(2)-(4), (7), (11)-(13).) Standard 7(e) requires the arbitrator to disclose other matters relating to professional discipline and the arbitrator's inability to conduct and complete the arbitration in a timely manner.

Although the mandatory disqualification provisions of section 1281.91, subdivision (b)(1), apply only to a "proposed neutral arbitrator," any neutral arbitrator (proposed or serving) "shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding" if any ground for disqualification in section 170.1 exists. (§ 1281.91, subd. (d).) Section 170.1, in turn, provides specific grounds for disqualification for a judge (and thus an arbitrator), including personal knowledge of disputed evidentiary facts concerning the proceeding, specified relationships with parties or lawyers in the proceeding, or a financial interest in the subject matter of the proceeding. (§ 170.1, subd. (a)(1)(A), (3)(A), (4)-(5).) Further, section 170.1, subdivision (a)(6)(A), provides for disqualification if "(i) The judge believes his or her recusal would further the interests of justice. [¶] (ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial. [¶] [Or,] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." The trial court must vacate an arbitration award if the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify

11

himself or herself as required by that provision." (§ 1286.2, subd. (a)(6)(B).) "'On its face, the statute leaves no room for discretion. If a statutory ground for vacating the award exists, the trial court must vacate the award.'" (*Honeycutt, supra*, 25 Cal.App.5th at pp. 924-925; accord, *Luce, supra*, 162 Cal.App.4th at p. 730.)

B.  *Standard of Review*

      ""'On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues.'"" (*ECC Capital Corp. v. Manatt, Phelps & Phillips, LLP* (2017) 9 Cal.App.5th 885, 900; accord, *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 386; see *Haworth v. Superior Court, supra*, 50 Cal.4th at p. 383 [reviewing de novo whether trial court properly vacated arbitration award based on arbitrator's failure to disclose certain circumstances].) We also review de novo "legal issue[s] involving statutory construction and the ascertainment of legislative intent." (*Azteca, supra*, 121 Cal.App.4th at p. 1164.)

C.  *The Award Must Be Vacated Based on the Arbitrator's Failure To Disqualify Himself Upon Ted's Timely Demand*

      As discussed, on March 13, 2018 Judge Shook disclosed two arbitrations in March and September 2016 involving the parties and their lawyers in which Judge Shook was the neutral arbitrator, pursuant to section 1281.9, subdivision (a). Ted timely served his notice of disqualification based on the disclosures on March 22, 2018—nine days after service of the

12

disclosure report. Harry and Christine contend in their supplemental briefing[7] that Judge Shook was not required to make disclosures under section 1281.9, subdivision (a), and Ted did not have a right to disqualify Judge Shook under section 1281.91, subdivision (b)(1), because both provisions apply only to a "proposed neutral arbitrator." Harry and Christine assert Judge Shook was the appointed arbitrator, not a "proposed" arbitrator because the parties had agreed in their 2012 arbitration agreement that Judge Shook would arbitrate "all issues" arising among the parties. Ted responds that even though the parties agreed in 2012 that Judge Shook would serve as the arbitrator and he had presided over the first arbitration, he still was "proposed" for purposes of this arbitration because he could have declined the engagement or become unavailable, or matters could have arisen since the initial agreement that would have affected his impartiality.

We agree with Ted that Judge Shook was a "proposed neutral arbitrator" subject to the disclosure and disqualification requirements of sections 1281.9 and 1281.91. As the cover letter to his disclosure report made clear, the disclosures were made to the parties to confirm their acceptance of Judge Shook as the arbitrator. The letter provided, for example, that Judge Shook would entertain and accept offers of employment with the parties and attorneys while the arbitration was pending "[i]f selected as a neutral arbitrator." Similarly, the letter concluded that if the parties proceeded to the scheduled hearing, that would "be

_____

7    On January 8, 2021 we requested the parties provide supplemental briefing on whether Judge Shook was a "proposed neutral arbitrator" pursuant to section 1281.91, subdivision (b)(1). The parties filed supplemental briefs on January 18.

13

deemed acknowledgment of . . . your acceptance of the arbitrator."

As the proposed neutral arbitrator, Judge Shook was legally required to make the disclosures set forth in his disclosure report, and Ted had an absolute right to disqualify him without cause. (*Luce, supra*, 162 Cal.App.4th at p. 735; *Azteca, supra*, 121 Cal.App.4th at p. 1163; see § 1281.91, subd. (b)(1).) But despite Ted's notice of disqualification, the arbitrator refused to disqualify himself. The trial court was therefore required to vacate the award under section 1286.2, subdivision (a)(6)(B), because the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91, but failed upon receipt of timely demand to disqualify himself or herself as required by that provision."

Harry and Christine contend the trial court properly confirmed the arbitration award because Ted stipulated in the arbitration agreement for Judge Shook to serve as the arbitrator and "not to contest that Judge John P. Shook will arbitrate all issues with binding authority," so Ted could not withdraw his consent simply because the arbitrator ruled against him. But the parties to an arbitration agreement cannot contract away their statutory right to disqualify an arbitrator pursuant to section 1281.91. (*Azteca, supra*, 131 Cal.App.4th at p. 1160.)

The Court of Appeal's opinion in *Azteca* is instructive. There, the parties agreed to private arbitration pursuant to construction industry dispute resolution procedures that provided, upon receiving an objection to an arbitrator, the American Arbitration Association (AAA) would make a conclusive determination whether to disqualify the arbitrator. (*Azteca, supra*, 121 Cal.App.4th at p. 1160.) Plaintiff Azteca

14

Construction, Inc., demanded disqualification of the proposed arbitrator pursuant to section 1281.91, but the AAA decided there was no good cause for the disqualification and affirmed the appointment of the arbitrator. The trial court denied Azteca's motion to vacate the arbitration award, finding Azteca had waived its right to disqualify the arbitrator by agreeing to the AAA rules. (*Azteca*, at p. 1162.) The Court of Appeal reversed, explaining, "While the parties may be free to contract among themselves for alternative methods of dispute resolution, such contracts would be valueless without the state's blessing. Because it imbues private arbitration with legal vitality by sanctioning judicial enforcement of awards, the state retains ultimate control over the 'structural aspect[s] of the arbitration' process. [Citation.] The critical subject of arbitrator neutrality is a structural aspect of the arbitration and falls within the Legislature's supreme authority. [¶] Finally, the neutrality of the arbitrator is of such crucial importance that the Legislature cannot have intended that its regulation be delegable to the unfettered discretion of a private business." (*Id*. at pp. 1167-1168.) "Only by adherence to the Act's prophylactic remedies can the parties have confidence that neutrality has not taken a back seat to expediency." (*Id*. at p. 1168.)

We agree with the reasoning in *Azteca*. Although federal and state law favor enforcement of valid arbitration agreements (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97), the California Supreme Court has emphasized that certain "'minimum levels of integrity' [must] be achieved if the [arbitration] arrangement in question is to pass judicial muster" (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825; accord, *Armendariz*, at p. 103; see *Honeycutt, supra*,

25 Cal.App.5th at p. 931 ["The public deserves and needs to know that the system of private justice that has taken over large portions of California law produces fair and just results from neutral decision makers."]). As discussed, section 1281.9 is designed to ensure the neutrality of the arbitrator by enabling a party to disqualify the arbitrator for failure to make a required disclosure or based on the disclosures. It is true, as argued by Harry and Christine, that Ted agreed Judge Shook would serve as the arbitrator, and nothing in the disclosure revealed information not previously known to Ted (that is, that Judge Shook was the arbitrator in the two previous matters). But section 1281.91 makes clear the arbitrator "shall" be disqualified upon the timely service of a notice of disqualification based on the disclosure statement, without requiring a showing of good cause.

Under Harry and Christine's reading of section 1281.91, once the parties agreed not to contest Judge Shook serving as the arbitrator, the parties would be limited in their ability to object to Judge Shook based on any changed circumstances since the parties had stipulated to the arbitration agreement in December 2012. For example, Judge Shook could have accepted repeat referrals from the attorneys for one side of the dispute with the opposing party having limited recourse despite the possible impact of the referrals on his neutrality.[8] This would be contrary

_____

[8] Ted could still have challenged Judge Shook based on any ground for disqualification under section 170.1 (applicable to proposed and serving arbitrators). The acceptance of repeat referrals could fall within section 170.1, subdivision (a)(6)(A)(iii) ("[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"), but this provision would not provide the certainty of disqualification afforded by the

16

to the intent of the Legislature in enacting section 1281.9 and 1281.91 "to inform and protect participants in arbitration, and to promote public confidence in the arbitration process." (Ethics Standards, std. 1(a); see *Azteca, supra*, 121 Cal.App.4th at p. 1167.)

Harry and Christine's reliance on *Fininen v. Barlow* (2006) 142 Cal.App.4th 185, 190-191 (*Fininen*) and *Dornbirer v. Kaiser Foundation Health Plan, Inc.* (2008) 166 Cal.App.4th 831, 846 (*Dornbirer*) to argue the trial court has discretion whether to vacate an arbitration award under section 1286.2, subdivision (a)(6), is misplaced. In *Fininen*, the arbitrator disclosed he had previously mediated a construction collection dispute involving appellant Mark Barlow, but the arbitrator failed to provide any specifics of the prior mediation. (*Fininen*, at p. 188.) Following the disclosures, Barlow and the opposing party waived any potential conflicts. (*Ibid.*) The Court of Appeal affirmed the trial court's denial of Barlow's motion to vacate the arbitration award because Barlow was a party to the nondisclosed case on which he had access to his own file, consented to proceed with the arbitration based on the incomplete information, and waited until after the arbitrator ruled against him to object to the arbitrator. (*Id.* at p. 190.) On these facts the court concluded it would be "absurd to construe section 1286.2, subdivision (a)(6) to require that the arbitration award be vacated based on an incomplete or untimely disclosure." (*Id.* at pp. 190-191.)

_____

mandatory disqualification provision of section 1281.91, subdivision (b)(1). We are not suggesting Judge Shook took any actions that created an actual conflict or affected his impartiality, only that Ted had a right to disqualify him based on the disclosure statement.

17

Similarly, in *Dornbirer*, an arbitrator disclosed numerous prior arbitrations involving defendant Kaiser Permanente or its counsel, but the arbitrator's disclosure did not contain complete information on the details of the arbitrations, including the dates, the names of the attorneys, and the specifics of the award. (*Dornbirer, supra*, 166 Cal.App.4th at pp. 840-841.) The Court of Appeal concluded the incomplete disclosures under section 1281.9 did not support vacatur because the plaintiff was on notice prior to the arbitration of the missing information but consented to the arbitration and failed to raise an objection until after the arbitrator ruled in favor of Kaiser. (*Dornbirer*, at p. 846.) The Court of Appeal explained the plaintiff's remedy for the arbitrator's "failure to meet the statutory disclosure requirements was to disqualify him on that basis *before* the arbitration commenced, not after the arbitration was over." (*Ibid.*)

Unlike the appellants in *Fininen* and *Dornbirer*, Ted served a timely disqualification notice before commencement of the arbitration. Further, both cases concerned the materiality of incomplete disclosures under section 1281.91, subdivision (a), for purposes of disqualification, not the absolute right to disqualification under section 1281.91, subdivision (b)(1) and (2), under which a party has a right to disqualify an arbitrator without cause one time in a single arbitration. Ted properly exercised his right to disqualify the arbitrator.

## DISPOSITION

The judgment is reversed and remanded with directions for the trial court to vacate its order granting the petition to confirm

18

the arbitration award, and to enter a new order vacating the award.  Ted Roussos is to recover his costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.