Filed 4/27/23  New England Wire Technologies v. Cooner Sales CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| NEW ENGLAND WIRE TECHNOLOGIES CORPORATION et al., <br><br>        Plaintiffs and Appellants, <br><br>        v. <br><br> COONER SALES COMPANY, LLC et al., <br><br>         Defendants and Respondents. | B320514 <br><br> (Los Angeles County Super. Ct. No.21STCV43375) |

APPEAL from a judgment of the Superior Court of
Los Angeles County, Stephen I. Goorvitch, Judge.  Affirmed.

Grignon Law Firm, Margaret M. Grignon, Anne M. Grignon; Hill, Farrer & Burrill, William A. White, G. Cresswell Templeton for Plaintiffs and Appellants.

Weinstein Law Firm and David R. Weinstein; Quintairos, Prieto, Wood & Boyer, David G. Halm; Larson, Steve E. Bledsoe, Jerry A. Behnke, Andrew J. Bedigian for Defendant and Respondent Cooner Sales Company;

Schnader Harrison Segal & Lewis, Bruce B. Kelson, Stephen H. Dye for Defendant and Respondent American Arbitration Association.

---

## INTRODUCTION

Appellants New England Wire Technologies Corporation and New England Electric Wire Corporation (collectively New England) have been engaged in arbitration proceedings with respondents Cooner Sales Co., LLC and Cooner Enterprises, Inc. (collectively Cooner entities) since 2009.  Respondent American Arbitration Association, Inc. (AAA) is the administrator of the long-running arbitration, which has included approximately 100 evidentiary hearings before a three-arbitrator panel and resulted in four interim awards.

In 2021, New England sought to disqualify all three arbitrators based on their failure to disclose that an attorney who represented Cooner Sales from 2015 to 2019 was also an active AAA arbitrator. New England also sought supplemental disclosures regarding the business relationship between that attorney and AAA.  After the arbitrators and AAA refused New England's demands, New England filed a complaint in superior court asserting causes of action for provisional remedies under

2

Code of Civil Procedure section 1281.8,[1] unfair competition under Business and Professions Code section 17200 et seq. (UCL), equitable severance of any provision in the arbitration agreement requiring use of AAA, and declaratory and injunctive relief including cessation of the current arbitration proceedings and starting anew with a new arbitral administrator.  Respondents separately filed demurrers to the complaint.

New England subsequently moved to disqualify the law firm representing Cooner Sales.  New England alleged that an attorney disqualified from the arbitration in 2014 recently joined the firm, and his affiliation precluded the firm's further participation in the superior court and arbitration proceedings. Cooner Sales opposed the motion.

The superior court sustained all three demurrers without leave to amend.  On the causes of action asserted under section 1281.8, the court ruled that New England sought remedies beyond the scope of section 1281.8 and failed to show that provisional remedies were necessary in any event.  It further concluded the arbitrators were not required to make the requested disclosures, and, even if they were, New England failed to timely seek disqualification.  In light of these rulings, the court further concluded that there were no bases upon which to grant equitable severance or declaratory or injunctive relief.  The court also rejected the UCL claim, which sounded against AAA only, as derivative of the other causes of action. The court denied New England's motion to disqualify Cooner Sales's counsel as moot.

On appeal, New England contends the court erred by sustaining the demurrers without leave to amend and by

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

declining to address its motion to disqualify counsel. We affirm. New England has not demonstrated an entitlement to relief under section 1281.8, it failed to challenge the ruling on the equitable severance cause of action, and its other claims are derivative or subject to arbitral immunity. New England has not cited any authority requiring the superior court to resolve motions to disqualify prior to resolving other dispositive motions, and we decline to infringe on the court's wide discretion to control proceedings before it. The request for judicial notice is denied.

## BACKGROUND[2]

### I. The Parties

New England designs, manufactures, and sells custom wire and cable. New England and a predecessor of the Cooner entities formed a partnership to distribute New England's products in seven western states. In 1996, that partnership became Cooner Sales, a member-managed LLC Cooner Sales is governed by an operating agreement between its two members, New England Wire Technologies Corporation and Cooner Enterprises. New England Electric Wire Corporation holds a 35 percent membership interest in Cooner Sales, and Cooner Enterprises holds the remaining 65 percent. Cooner Sales is and always has been managed by the three principals of Cooner Enterprises. AAA is a provider of arbitration services.

---

[2] We draw the substantive factual allegations concerning the parties and the arbitration from New England's complaint. We must accept these allegations as true for purposes of this appeal. (See *Mathews v. Becerra* (2019) 8 Cal.5th 756, 761-762.) We draw the limited and largely undisputed facts concerning Richmond's disqualification from New England's motion to disqualify Larson LLP.

4

## II.   The Fifth Arbitration

The Cooner Sales operating agreement contains an arbitration provision stating that "[a]ny controversy or claim arising out of, or relating to this Agreement, or to the interpretation, breach or enforcement thereof, shall be settled by arbitration in Los Angeles, California in accordance with the rules then obtaining of the American Arbitration Association." New England and Cooner Sales have arbitrated several disputes pursuant to this provision since 1998.  Cooner Sales initiated the arbitration at issue, "the Fifth Arbitration," in 2009, by asserting claims against New England.  New England counter-claimed against both Cooner Sales and Cooner Enterprises.  AAA is the administrator of the still-ongoing Fifth Arbitration, over which AAA arbitrators Peter D. Collisson, Paul E. Burns, and Hon. James M. Slater (Ret.) (collectively "the panel" or "the arbitrators") are presiding.

The lengthy Fifth Arbitration has been divided into multiple phases, and the parties have participated in approximately 100 evidentiary hearing days, most recently on May 31, 2019.  The panel has issued four interim awards, most recently on March 31, 2021.  The interim awards have been a mixed bag for the parties: on the one hand, the panel has determined that Cooner Sales is entitled to "millions of dollars" in unpaid commissions and profit disgorgements from New England; on the other, it has agreed with New England that the parties' distribution agreement ended in 2016, Cooner Sales improperly paid Cooner Enterprises's legal expenses, and Cooner Sales should be dissolved unless Cooner Enterprises buys out New England Electric Wire Corporation's interest in the LLC.

### III. Arbitration Counsel

#### A. Arbitrators Disqualify Cooner Entities' Counsel

In 2014, the fifth year of the Fifth Arbitration, attorney Rick Richmond and his then-law firm, Jenner & Block, associated into the arbitration as counsel of record for both Cooner entities. New England filed an action in superior court seeking to disqualify Richmond and Jenner & Block due to an alleged conflict of interest between Cooner Sales and Cooner Enterprises arising from New England's counterclaims against Cooner Sales. The superior court referred the matter to the arbitrators, who ultimately granted the motion.

#### B. Cooner Sales Retains O'Brien and Larson LLP

Shortly thereafter, in January 2015, attorney Robert C. O'Brien and his then-law firm Arent Fox LLP associated into the arbitration as counsel for Cooner Sales only. They filed an updated notice of appearance in April 2015. O'Brien subsequently left Arent Fox LLP to join a new firm, Larson O'Brien LLP, as a named partner. O'Brien and Larson O'Brien LLP continued to represent Cooner Sales. In September 2019, O'Brien left Larson O'Brien LLP to serve as National Security Advisor to former president Donald Trump. O'Brien withdrew as Cooner Sales's counsel at that time, although the newly renamed Larson LLP continued to represent Cooner Sales in the Fifth Arbitration.

### IV. O'Brien's Alleged Conflicts

#### A. Disclosures Relating to O'Brien

When O'Brien initially associated into the matter in early 2015, arbitrators Collisson and Burns represented that they did not have any additional disclosures relating to O'Brien or Arent Fox LLP. Arbitrator Slater disclosed that he previously served as

6

an arbitrator on three cases in which Arent Fox LLP represented parties. Slater stated that those previous matters would not affect his neutrality in this case.

In response to a request from Collisson that the parties advise the panel if they were aware of any relationships requiring disclosure, O'Brien sent AAA's Manager of ADR Services a letter on February 4, 2015. O'Brien's letter stated, "pursuant to AAA Commercial Arbitration Rules and Mediation Procedures, Rule R-17, Arent Fox is unaware of any circumstance likely to give rise to justifiable doubt as to the impartiality or independence of the arbitrators in this matter . . . including any bias or financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives." Neither the panel nor O'Brien made any further disclosures.

### B. O'Brien's Alleged Conflicts of Interest

New England alleges that, at the time O'Brien sent his disclosure letter, "(a) he was an active roster member of the AAA, which is the DRPO [dispute resolution provider organization] in the Fifth Arbitration; (b) he intended to accept arbitration matters as a AAA arbitrator while he simultaneously represented [Cooner Sales] before the AAA panel members, who were all active co-members of the AAA's arbitration roster with O'Brien; and (c) he also intended to market and promote the AAA's services and/or be one of its speakers while he was also counsel for [Cooner Sales] in the Fifth Arbitration." New England alleges that neither O'Brien, the panel, nor AAA informed it of these facts.

### C. New England Discovers the Alleged Conflicts

New England alleges: "In August 2021, New England's counsel discovered that O'Brien had returned to his law firm

7

(now Larson LLP) as 'Partner Emeritus.' While attempting to determine O'Brien's status, New England's counsel inadvertently learned for the first time that, while representing [Cooner Sales] in the Fifth Arbitration from 2015 to Fall 2019, O'Brien had simultaneously been serving as an AAA arbitrator in multiple other matters. Subsequently, New England's counsel also inadvertently learned that, during the same time, O'Brien also served as an active AAA roster member and/or, upon information and belief, an active AAA marketer, promoter, and/or speaker. While O'Brien had offhandedly indicated in an early colloquy with the Panel that he had previously stood in their shoes as a AAA arbitrator or been a speaker at the AAA's request, neither he, nor the Fifth Arbitration Panel members, nor the AAA, ever disclosed to New England that O'Brien was, in fact, an active AAA roster member, intended to accept AAA cases as an arbitrator, and market or promote the AAA, all the [*sic*] while he was simultaneously representing [Cooner Sales] before the three AAA roster members who presided over the Fifth Arbitration. As a result, New England reasonably entertains doubts about whether the Panel has been or is able to be impartial in the Fifth Arbitration, including, whether and to what extent O'Brien's simultaneous business relationship with the AAA may have impacted the administration of the proceedings *vis-à-vis* the AAA and the Panel."

## V.    New England Requests Arbitrator Disqualification and Supplemental Disclosures

On September 24, 2021, New England requested in writing that the arbitrators disqualify themselves and disclose the full nature and extent of the business relationship between the AAA

and O'Brien during O'Brien's representation of Cooner Sales. The arbitrators declined recusal on October 4, 2021.

On October 5, 2021, New England requested that the panel respond to its request for additional disclosures. The arbitrators responded to this request on October 12, 2021, stating that they would not "impose any requirement in this case that [they] disclose Robert O'Brien's present or past status as a AAA arbitrator." They further stated that they had no obligation to investigate or disclose "the full nature and extent of O'Brien's business relationship with the AAA," and instead were obligated only to "restate the extent we knew Mr. O'Brien—not to report whether he was a [*sic*] AAA arbitrator." The arbitrators also asserted that if anyone had such an obligation, it was the AAA, not the individual arbitrators.

On October 15, 2021, New England sent a letter to the AAA requesting disclosure of the full extent of O'Brien's business relationship with the AAA from the time of his association into the case in January 2015 to the time of his departure from Larson O'Brien LLP in September 2019. New England also sent the panel a "Notice of Disqualification to Panel Members."

The AAA responded to New England's letter on October 25, 2021, stating: "AAA declines [New England's] request for information regarding AAA and [Cooner Sales's] former counsel Robert O'Brien. Standard 8(b) of California's Ethics Standards for Neutral Arbitrators in Contractual Arbitration calls for additional provider organization-related disclosures only in consumer arbitration cases. . . . Because this matter is not a

consumer arbitration, AAA will not provide the requested information absent party agreement."[3]

The AAA's Administrative Review Council denied New England's notice of disqualification on November 9, 2021. It concluded the panel "should be reaffirmed as arbitrator for this case." The AAA further asserted that its decision was "conclusive," and any further objections to the panel "must be based on new grounds."

## VI. New England Files Suit in Superior Court

On November 24, 2021, New England filed a complaint against Cooner Sales, Cooner Enterprises, and AAA in superior court. In addition to the preceding allegations, it alleged that the panel "engaged in a series of irregular actions" that would cause a person aware of the facts to reasonably entertain a doubt about the panel's impartiality after O'Brien appeared in the arbitration proceedings. The "irregular actions" "appeared to favor [Cooner Sales] immediately, in the long term, and/or when considered in the aggregate." They included "repeatedly expanding the period for which [Cooner Sales] could seek monetary relief and repeatedly interjecting the Panel's unilateral requests for additional evidence into the arbitration proceedings, even though the parties had already presented their respective cases." New England further alleged that the panel's "failed disclosures and usurpation of the Fifth Arbitration have been very costly," in that

---

[3]     In accordance with section 1281.85, the Judicial Council adopted ethics standards and requirements for neutral arbitrators. The standards are intended to "guide the conduct of arbitrators, to inform and protect participants in arbitration, and to promote public confidence in the arbitration process." (Ethics Standards for Neutral Arbitrators, Standard 1(a).))

the panel had collected approximately $4.9 million in fees during the Fifth Arbitration, including approximately $3.5 million incurred after O'Brien appeared. Each of New England's five causes of action incorporated all preceding allegations.

In the first cause of action, New England sought provisional relief against the Cooner entities under section 1281.8. New England alleged that the arbitrators' failure to supplement their disclosures and disqualify themselves "constitutes ongoing wrongful conduct, which unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury" to New England. It alleged that it had "no adequate remedy at law for the injuries currently being suffered" and likely to be suffered, namely the "lost right to an undoubtedly impartial arbitral proceeding." It requested as relief "a temporary restraining order, an order to show cause, a preliminary injunction, and a permanent injunction disqualifying the current arbitration Panel and setting aside *all* interim awards issued by this disqualified Panel of arbitrators," all of which it asserted were "essential to avoid irreparable injury to New England and to prevent the arbitration proceedings from being rendered ineffectual."

In its second cause of action, New England sought provisional relief under section 1281.8 against the Cooner entities and AAA. New England alleged that arbitrators Collisson and Burns actively practiced law throughout the Fifth Arbitration and "may have represented parties in AAA proceedings." It further alleged that AAA "failed and is incapable of providing the requisite case management services it advertises, including, [*sic*] a complete, reliable, sufficient, and definitive record of the arbitration proceedings," and required New England

11

to create a "document repository at great effort and expense, under severe and unfair time pressure, and subject to the Panel's order and threat that any evidence or other materials would be excluded from the record if not timely included in the repository." New England requested "a temporary restraining order, an order to show cause, a preliminary injunction, and a permanent injunction disqualifying the Panel, setting aside *all* Interim Awards issued by the disqualified AAA-appointed panel, precluding the AAA from continuing as the DRPO for arbitration proceedings between New England and [the] Cooner [entities], and ordering that a different DRPO conduct arbitration proceedings between [the] Cooner [entities] and New England anew."

In its third cause of action, New England alleged that AAA engaged in unfair competition in violation of the UCL. New England alleged that AAA maintains a "secret arbitrator roster" that is "comprised of a substantial number of actively practicing attorneys who may represent or consult with clients in AAA arbitration proceedings presided over by other AAA arbitrators who also may be actively practicing attorneys." New England alleged that AAA "provides or can provide" its arbitrators with access to the roster, "at least regarding other roster members who represent parties before them so that the arbitrator may disclose the relationship to the parties," but does not do so as a matter of policy in non-consumer arbitrations. New England alleged this policy was contrary to AAA's advertising, which represents that AAA will "err on the side of transparency" and its arbitrators "should disclose" any "relationship of interest [that] crosses the arbitrator's mind." New England also alleged that AAA requires its roster members to "pledge to support the AAA and also to

actively support both its policies and practices," including recommending the use of AAA and its rules, to remain on the roster. Accordingly, New England alleged, AAA arbitrators' financial success is "closely tied to the AAA's business success and business model," and arbitration parties aware of these circumstances might reasonably entertain a doubt about their impartiality when an opposing party is represented by a member of the roster. For these and other reasons, New England sought "to enjoin the AAA and its arbitrators: (a) from continuing to engage in such violations; and (b) from proceeding further with the Fifth Arbitration, particularly pending a determination on the merits of this complaint."

In its fourth cause of action, New England sought "equitable severance of arbitration agreement term or condition" against the Cooner entities. It alleged that AAA's unfair and unlawful business practices "render any interpretation of the [Cooner Sales] Operating Agreement to require New England to use the AAA as a DRPO both unconscionable and inequitable, both in theory in and practice," and New England would not be assured of impartial proceedings "so long as any AAA arbitrator presides over the arbitration proceedings or the AAA is the DRPO." New England acknowledged that the arbitration provision in the Cooner Sales operating agreement "does not expressly require that the parties use the AAA as the DRPO, only that they arbitrate using the AAA's then-obtaining rules," and explained it sought to restrict any interpretation of the agreement to use AAA as the DRPO. It clarified that it was not seeking monetary damages or restitution, but "merely a ruling that the arbitration proceed anew before arbitrators affiliated with a different DRPO and administered by that DRPO, utilizing

13

the AAA Commercial Arbitration Rules (aside from the rules dealing with the selection of arbitrator(s)).”

In its fifth cause of action for declaratory relief against all defendants, New England sought "declaratory judgments and injunctive relief . . . including, without limit, declarations that the Panel members and AAA violated their disclosure and disqualification obligations under applicable law, that there is no requisite record of the Fifth Arbitration proceedings, that the current arbitration Panel and AAA are disqualified, and that the arbitration proceedings should proceed anew with a different DRPO than the AAA.”

## VII. Demurrers

Cooner Sales, Cooner Enterprises, and AAA each separately demurred to New England's complaint.

Larson LLP filed Cooner Sales's demurrer on January 14, 2022. Cooner Sales generally demurred to the complaint in its entirety under section 430.10, subdivision (e), asserting it failed to state facts sufficient to constitute a cause of action. It also specifically demurred to each of the causes of action against it. Cooner Sales asserted that the first and second causes of action for provisional relief under section 1281.8 were legally deficient because New England failed to plead facts "demonstrating that (i) a final award will be rendered ineffectual and it will suffer irreparable harm absent provisional relief, (ii) it is likely to succeed on the merits, and (iii) there is no adequate remedy at law." It further asserted that the potential harm to Cooner Sales "significantly outweighs the potential harm to New England if the Court upends the Fifth Arbitration." With respect to the fourth cause of action for equitable severance, Cooner Sales argued that New England failed to identify a valid legal or

14

factual basis for the requested relief. Cooner Sales asserted that the fifth cause of action for declaratory relief was legally deficient, based on untimely objections to the panel, and did not concern a justiciable controversy.

Cooner Enterprises also filed a demurrer on January 14, 2022. Like Cooner Sales, it generally demurred on the grounds that New England failed to allege facts or law sufficient to constitute causes of action. Cooner Enterprises asserted the first and second causes of action for provisional relief under section 1281.8 failed to allege "facts sufficient to demonstrate the Arbitrators' final award will be ineffectual; that without provisional relief, New England will suffer irreparable harm that outweighs harm to Cooner Enterprises an injunction would cause; that it (New England) is likely to succeed on the merits of its disqualification theory; or that New England has inadequate remedies at law." Cooner Enterprises argued that the fourth and fifth causes of action failed because they were "entirely dependent" on the deficient first and second causes of action, and also did not allege facts warranting the relief requested.

AAA filed its demurrer on January 18, 2022. It argued that the second, third, and fifth causes of action were legally deficient because AAA was immune from suit under the doctrine of arbitral immunity, AAA was not a necessary or proper party to the action, and New England waived any right to sue AAA by agreeing to its Commercial Arbitration Rules.

All three defendants filed requests for judicial notice in support of their demurrers. AAA requested that the court take judicial notice of its Commercial Arbitration Rules, which were cited in New England's complaint. Cooner Sales and Cooner Enterprises requested that the court take judicial notice of

15

several arbitral documents in support of their demurrers, including New England's demands for disqualification and disclosure, the arbitrators' and AAA's responses, and the fourth interim award.

New England opposed the demurrers and requests for judicial notice.

## VIII. Motion to Disqualify Larson LLP

On January 18, 2022, four days after Cooner Sales filed its demurrer, New England filed a motion to disqualify Larson LLP from representing Cooner Sales. New England asserted that the arbitrators previously disqualified attorney Richmond and his then-law firm, Jenner & Block, from representing both Cooner Sales and Cooner Enterprises due to an actual conflict precipitated by New England's counterclaims against the Cooner entities. New England further asserted that, on August 30, 2021, it learned that Richmond had joined Larson LLP. New England asserted that Larson LLP did not notify New England or the arbitrators of Richmond's affiliation with Larson LLP.

New England asserted that it raised the issue in its September 24, 2021 demand that the arbitrators disqualify themselves, but did not file a motion to disqualify Larson LLP in the arbitration because the arbitrators' own alleged need for disqualification deprived them of "the jurisdiction or authority 'to consider, act upon, or decide a motion to disqualify Larson LLP.'" Cooner Sales nevertheless opposed the disqualification of its counsel in its opposition to New England's demand to disqualify the arbitrators. According to New England, Cooner Sales claimed Larson LLP obtained an ethics opinion and consent from Cooner Enterprises before it hired Richmond, and also implemented an

16

ethical screen; neither Larson LLP nor Cooner Sales shared this information with New England.

New England argued disqualification was required because Richmond already had been disqualified, and concerns about the duty of loyalty mandated the vicarious disqualification of any firm he subsequently associated with. It further argued that the conflict at issue could not be resolved by the consent of Cooner Sales or Cooner Enterprises, and consent from New England was required but not given. New England argued that it had standing to seek disqualification and was timely in its efforts to do so. New England's counsel filed a declaration in support of the motion, to which he attached 17 supportive exhibits. New England also filed a request for judicial notice in support of the motion, and an ex parte request that the motion to disqualify be heard before the demurrers.

Cooner Sales opposed the motion to disqualify its counsel. It also filed declarations from members of Larson LLP, including Richmond, in support of the opposition. Cooner Sales contended there was never a conflict of interest between Cooner Sales and Cooner Enterprises in the first place, and the previous disqualification of Richmond should not be imputed to Larson LLP. It also asserted that New England lacked standing to disqualify its counsel and filed the motion for an improper purpose. Cooner Sales opposed the ex parte request to advance the hearing of the motion to disqualify.

IX. **Hearing and Ruling**

    A. **Hearing**

The superior court granted in part New England's request to advance the hearing on the motion to disqualify Larson LLP and rescheduled the hearings on all pending motions to the same

17

date.  Prior to the hearing, the court issued a tentative ruling stating an intention to sustain the demurrers without leave to amend and deny the motion to disqualify Larson LLP as moot.

At the hearing, the court expressed concern that New England was "taking an interlocutory appeal of a matter that would be resolved at the end of an arbitration and you are asking me to essentially supervise the arbitration."  The court stated that the Code of Civil Procedure included procedures to vacate an arbitration award issued by biased arbitrators, but "that's at the end of the case."  The court heard arguments from all parties on these substantive issues.  It also heard extensive argument regarding the motion to disqualify Larson LLP, and whether that motion needed to be resolved prior to the demurrers.

At the conclusion of the hearing, the court requested supplemental briefing on two issues related to the motion to disqualify:  (1) whether the court was required to resolve the motion before ruling on the demurrers, and (2) whether New England was required to raise the disqualification issue with the arbitrators before seeking relief in the superior court.  New England and Cooner Sales filed supplemental briefing addressing the court's questions.  The court took the matter under submission upon receipt of the supplemental briefing.

**B.    Ruling**

On April 11, 2022, the court issued a written order denying the requests for judicial notice, sustaining the demurrers without leave to amend, and denying the motion to disqualify Larson LLP as moot.  The court concurrently entered an order dismissing the action with prejudice.

In the written order, the court stated that it sustained the Cooner entities' demurrers to the first and second causes of action

18

for provisional relief "for multiple independent reasons."  First, the court ruled that New England "seek[s] a remedy beyond the scope authorized by Code of Civil Procedure section 1281.8."  The court explained that section 1281.8 authorized only "provisional" or temporary remedies aimed at maintaining the status quo, such as temporary restraining orders, writs of possession, and appointment of receivers.  The court found that New England instead sought "affirmative relief from the court," namely removing the arbitrators and DRPO, vacating all interim awards, and starting the arbitration anew.  The court concluded such expansive relief was beyond that authorized by the plain language of section 1281.8.  The court added that even if it were to look beyond the plain language of section 1281.8, it would decline to afford the requested relief on the grounds that doing would "undermine the intent of section 1285, *et seq.*, which is that arbitrations proceed without judicial interference and such matters are resolved at the conclusion of the arbitration proceeding."

In the alternative, the court concluded that New England failed to establish that provisional relief was necessary and it had no adequate remedy at law.  Quoting *Azteca Construction, Inc. v. ADR Consulting, Inc.* (2004) 121 Cal.App.4th 1156, 1167 (*Azteca*), it reiterated that the "'penalty for noncompliance' with applicable disclosure requirements is 'judicial vacation of the arbitration award,'" which constituted an adequate remedy at law.  It further concluded that New England failed to demonstrate a likelihood of success on the merits, because the disclosures it wanted the arbitrators to make were required only in consumer arbitrations, and O'Brien's mere appearance on the roster of AAA arbitrators "raises no question whether they would be fair and impartial."

The court added that even if New England were likely to succeed on the merits, it "waived the right to seek disqualification on this issue" by failing to timely seek disqualification of the arbitrators after O'Brien's comments regarding his relationship with AAA.

The court sustained the demurrer to the third cause of action for unfair competition, concluding "it is derivative of the first and second causes of action." The court also sustained the demurrers to the fourth cause of action for equitable severance and the fifth cause of action for declaratory relief "for the reasons discussed" in connection with the first and second causes of action. It added that declaratory relief was not warranted because such relief "'should not be used for the purpose of anticipating and determining an issue which can be determined in the main action.'"

The court denied the motion to disqualify Larson LLP as moot, "having ruled that Plaintiffs' action is untenable as a matter of law." It rejected New England's contention that it was required to resolve the disqualification motion before ruling on the demurrers, noting New England's acknowledgement that "California courts have not directly answered this question" and citing its inherent power to control matters pending before it. The court explained that policy considerations did not change its ruling, because "no unfair advantage would be afforded to [Cooner Sales] by ruling on the demurrer before ruling on the motion for disqualification. Mr. Richmond's employment at Larson LLP does not affect the court's interpretation of section 1281.8 and its application to the facts alleged in the complaint." The court also added that it declined to resolve the disqualification motion first in part due to New England's "gamesmanship": "Plaintiffs' insistence that the court rule on

20

this motion first is nothing more than an attempt to have this court issue an order of disqualification against Larson LLP, which Plaintiffs would then cite as collateral estoppel before the arbitration panel.  The arbitration panel—not this court—should resolve any issue whether Mr. Richmond's employment precludes Larson LLP from continuing to represent [Cooner Sales] in the arbitration."[4]

New England timely appealed.  It also filed a request that we take judicial notice of the complaint it filed in 2014 to disqualify Richmond, and the superior court's ruling in that case.  That motion is denied as unnecessary to resolution of this appeal.  (See *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 174 & fn. 4.)

## DISCUSSION

### I.      Demurrers

New England contends the court improperly sustained the demurrers because its complaint alleged facts sufficient "to state disqualification of both the arbitrators and AAA," "to state UCL claims against AAA,"

### A.      Standard of Review

A demurrer tests the legal sufficiency of the factual allegations in a complaint.  (*Title Ins. Co. v. Comerica Bank–California* (1994) 27 Cal.App.4th 800, 807.)  We review de novo the dismissal of a civil action after a demurrer is sustained without leave to amend.  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879 (*Cantu*).)  In doing so, "we determine

---

[4]      Cooner Sales represents in its brief, without citation to the record, that New England filed a motion to disqualify Larson LLP in the Fifth Arbitration shortly after the superior court issued its ruling, and the motion remains pending.

21

whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'" (*Ibid*.) "Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Ibid*.)

The appellant bears the burden of demonstrating that the superior court erroneously sustained the demurrer as a matter of law. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) To establish that a cause of action has been adequately pled, an appellant must demonstrate he or she has alleged "facts sufficient to establish every element of that cause of action. [Citation.]" (*Cantu, supra*, 4 Cal.App.4th at pp. 879–880.) If the complaint fails to plead any essential element of a particular cause of action, we affirm the sustaining of a demurrer. (*Ibid*.) Additionally, "[w]e review the correctness of the trial court's action in sustaining the demurrer, not the court's statement of reasons for its action." (*Martis Camp Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, 610.) Accordingly, "[w]e affirm the judgment if it is correct for any reason, regardless of the trial court's stated reasons." (*MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 802.)

We review an order denying leave to amend for an abuse of discretion. "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The appellant bears the burden of demonstrating the manner in which the complaint might be amended. (*Ventura29 LLC v. City of San*

22

*Buenaventura* (2023) 87 Cal.App.5th 1028, 1037; *Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

### B. First and Second Causes of Action

In its first and second causes of action, New England sought provisional relief under section 1281.8. "Provisional remedies" authorized by section 1281.8 "include[] the following: (1) Attachments and temporary protective orders . . . [;] (2) Writs of possession . . . [;] (3) Preliminary injunctions and temporary restraining orders issued pursuant to Section 527[; and] (4) Receivers appointed pursuant to Section 564." (§ 1281.8, subd. (a).) A party to an arbitration proceeding may apply for a provisional remedy under section 1281.8 "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (§ 1281.8, subd. (b).) This is because the statute "does not speak to any and all types of harm. It addresses only a circumstance in which a party might prevail in an arbitration but still have no recourse due to some changing condition." (*Riverside County Sheriff's Department v. Stiglitz* (2014) 60 Cal.4th 624, 633.)

"[T]he possibility that an arbitration award might be rendered ineffectual is a threshold or minimum requirement." (*Woolley v. Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1529 (*Woolley*).) "The logical reason" for this requirement "is to ensure that the court does not invalidate the province of the arbitrator—i.e., the court should be empowered to grant provisional relief in an arbitrable controversy only where the arbitrator's award may not be adequate to make the aggrieved party whole." (*Id.* at p. 1527.) Beyond this minimum requirement, the ordinary statutory or common law requirements for obtaining the desired provisional remedy still apply; section

1281.8 was intended to preserve the rules of equity that generally apply in the context of provisional relief.  (*Id.* at p. 1528; see also *California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 856.)  Thus, a party seeking injunctive relief pursuant to section 1281.8 must demonstrate that it satisfies the traditional requirements for such relief:  "that the applicant is likely to prevail on the merits, has no adequate alternative remedy, and will suffer irreparable harm if the injunction is denied."  (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 450.)

### 1.    Adequate Alternative Remedy

The failure of the arbitrators to disqualify themselves is not a "changing condition" that might leave New England with no recourse against the Cooner entities.  This alone severely undermines the claims for provisional relief under section 1281.8.  Even if we assume a final arbitration award would be ineffectual due to the arbitrators' failure to disqualify themselves, the existence of an adequate alternative remedy is clear.  The California Arbitration Act, § 1280, et. seq., addresses both the grounds for disqualification of an arbitrator and the remedy if the arbitrator improperly fails to disqualify himself or herself.  Section 1281.91, subdivision (d) states in part, "If any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding."  If the arbitrator "was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision," the superior court must vacate the arbitration award.  (§ 1286.2,

subd. (a)(6); see also *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 381 (*Haworth*).)

New England acknowledges that vacatur of a final arbitration award is "one means of judicial enforcement," but contends "[i]mmediate review also makes sense" because a disqualified arbitrator lacks the power, right, or privilege to hear a case. We disagree. Numerous cases demonstrate that the appropriate remedy when an arbitrator fails to make required disclosures is vacatur of the final award pursuant to section 1286.2, subdivision (a)(6). (See, e.g., *Haworth*, *supra*, 50 Cal.4th at p. 383 ["In the event Ossakow establishes that Judge Gordon failed to make a required disclosure, she is entitled to vacation of the arbitration award"]; *Grabowski v. Kaiser Foundation Health Plan, Inc.* (2021) 64 Cal.App.5th 67, 80 ["The arbitrator did not make the required disclosure. [Section 1286.2, subdivision (a)(6)(A)] therefore requires that the arbitration award be vacated, without any further showing."]; *Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 974 ["[D]espite Ted's notice of disqualification, the arbitrator refused to disqualify himself. The trial court was therefore required to vacate the award under section 1286.2, subdivision (a)(6)(B)."]; *Honeycutt v. JPMorgan Chase Bank, N.A.* (2018) 25 Cal.App.5th 909, 930 ["under section 1286.2, the arbitrator's failure to disclose the four arbitrations with counsel for Chase was a failure 'to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware,' which requires vacatur of the award"]; *Azteca*, *supra*, 121 Cal.App.4th at p. 1169 ["Since . . . Taylor's pre-arbitration disqualification was mandatory, the award to ADR Consulting must be vacated."].) "'A remedy is not inadequate merely because more time would be consumed by

pursuing it through the ordinary course of law.'" (*Baeza v. Superior Court* (2011) 201 Cal.App.4th 1214, 1221.)

New England relies on *Advantage Medical Services, LLC. v. Hoffman* (2008) 160 Cal.App.4th 806 (*Advantage Medical*) to support its contention that interim awards "may be subject to immediate judicial review." In *Advantage Medical*, an AAA arbitrator who was also a practicing attorney allowed "coverage counsel" for Advantage Medical's insurer to be present during the arbitration hearing. (*Advantage Medical*, *supra*, 160 Cal.App.4th at p. 811.) When counsel announced her appearance as "coverage counsel for Lloyds [*sic*] of London," the arbitrator did not inquire into the identity of the Lloyd's syndicates counsel represented, nor did he disclose that he and his law firm represented "P & I Clubs" that were "directly tied to Lloyd's of London through maritime syndicates." (*Id.* at p. 812.)

Hoffman discovered this information only after the arbitrator issued an interim award in Advantage Medical's favor. (*Advantage Medical, supra,* 160 Cal.App.4th at p. 812.) Hoffman alerted AAA to the issue and requested disqualification of the arbitrator and additional disclosures. (*Ibid.*) After the arbitrator declined to respond to the request for disclosures and refused to disqualify himself, and AAA confirmed his appointment, Hoffman filed suit in superior court. (*Id.* at pp. 812-813.) Specifically, Hoffman "filed a petition for an order disqualifying the arbitrator under section 1281.91, subdivision (a)(1) and (2) and vacating the interim award under sections 1286 and 1286.2, subdivision (a)(6)." (*Id.* at p. 813.) The superior court concluded the arbitrator violated Ethics Standard 7 ("Standard 7") of the Ethics Standards for Neutral Arbitrators in Contractual Arbitrators ("Ethics Standards") and section 1281.9 by failing to disclose his

26

relationship with Lloyd's syndicates, and that a person aware of the facts could reasonably entertain a doubt as to the arbitrator's impartiality. (*Id.* at p. 815.) It accordingly disqualified the arbitrator and vacated the interim award under section 1286.2, subdivision (a)(6). (See *id.* at pp. 816-817.) Advantage Medical appealed. The appellate court reversed the superior court's order disqualifying the arbitrator but affirmed vacatur of the award after concluding the superior court's ruling was supported by substantial evidence. (*Id.* at pp. 818-819.)

*Advantage Medical* is distinguishable procedurally. First, the appellate court did not discuss the interim nature of the challenged arbitration award. Cases are not authority for propositions they do not consider. (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.) Second, Hoffman did not seek provisional relief under section 1281.8; instead, she pursued vacatur of the award under section 1286.2, subdivision (a)(6), the prescribed avenue for relief when an arbitrator fails to make required disclosures or disqualify himself or herself. (See *Azteca, supra,* 121 Cal.App.4th at p. 1167 [the "penalty for noncompliance" with disclosure requirements is "judicial vacation of the arbitration award"].) Third, the appellate court reversed the superior court's order disqualifying the arbitrator because it concluded that the California Arbitration Act "does not provide for the disqualification of an arbitrator after he or she has ruled on an issue of contested fact." (*Advantage Medical, supra,* 160 Cal.App.4th at p. 810.) It held that the petition to disqualify the arbitrator "was not viable because he had already issued the interim award," and Hoffman's "recourse was to seek vacatur of the interim award based on [the arbitrator's] failure to comply with disclosure requirements." (*Id.* at p. 821.) According to New

27

England's brief, disqualification of the arbitrators is the very relief it seeks, despite their issuance of *four* interim awards. *Advantage Medical* is directly contrary to this request. [5]

### 2. No Likelihood of Success on the Merits

### a. No Duty to Disclose

New England argues that it alleged facts sufficient to prevail on the merits, namely that the arbitrators had a duty to inquire about and disclose O'Brien's relationships with AAA under the applicable statutes and Ethics Standards. The superior court found this argument wanting, as do we.

To ensure that arbitrators serve as impartial decisionmakers, the California Arbitration Act "requires the arbitrator to disclose to the parties any grounds for disqualification." (*Haworth*, *supra*, 50 Cal.4th at p. 381.) "Within 10 days of receiving notice of his or her nomination to

---

[5] Section 1281.91, subdivision (d) provides that "[i]f any ground specified in Section 170.1 exists, a neutral arbitrator shall disqualify himself or herself upon the demand of any party made before the conclusion of the arbitration proceeding." *Advantage Medical* did not discuss the impact of this provision on the timeliness of Hoffman's petition, despite her reliance on section 1281.9, subdivision (a)(1), which requires arbitrators to disclose "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge." Even if section 1281.91, subdivision (d) extends the timeframe in which a party may seek disqualification beyond the resolution of a contested issue of fact, the party still must "show the omitted disclosures were disqualifying within the meaning of the governing statutes and ethics standards as a matter of law." (*Speier v. The Advantage Fund, LLC* (2021) 63 Cal.App.5th 134, 151 (*Speier*).) As discussed more fully below, New England did not make that showing.

28

serve as a neutral arbitrator, the proposed arbitrator is required, generally, to 'disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial.'" (*Ibid.*, quoting § 1281.9, subd. (a).)  Matters that must be disclosed include "[a]ny matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council . . .," and "[a]ny professional or significant personal relationship the proposed neutral arbitrator . . . has or has had with any party to the arbitration proceeding or lawyer for a party." (§ 1281.9, subd. (a)(2), (6).)  Arbitrators must also disclose "[t]he existence of any ground specified in Section 170.1 for disqualification of a judge" (§ 1281.9, subd. (a)(1)), including any reason "[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).)  "The Ethics Standards require the disclosure of 'specific interests, relationships, or affiliations' and other 'common matters that could cause a person aware of the facts to reasonably entertain a doubt that the arbitrator would be able to be impartial.'" (*Haworth*, *supra*, 50 Cal.4th at p. 381.)  Ethics Standard 7 sets forth numerous matters that must be disclosed by a person nominated or appointed as an arbitrator.  (See generally Ethics Standards for Neutral Arbitrators, Standard 7.)  It also provides that the duty of disclosure is a continuing one.  (See Ethics Standards for Neutral Arbitrators, Standard 7(c), (f).)

Ethics Standard 8 lists additional disclosures that must be made in consumer arbitrations,[6] including "[a]ny significant past,

---

[6]  "A 'consumer arbitration' is 'an arbitration conducted under a predispute arbitration provision contained in a contract' where

present, or currently expected financial or professional relationship or affiliation between the administering dispute resolution provider organization and a party or lawyer in the arbitration." (Ethics Standards for Neutral Arbitrators, Standard 8(b)(1).)  It expressly provides that "[a]n arbitrator is not required to make the disclosures required by this standard if he or she reasonably believes that the arbitration is not a consumer arbitration based on reasonable reliance on a consumer party's representation that the arbitration is not a consumer arbitration." (Ethics Standards for Neutral Arbitrators, Standard 8(a)(2).)

New England acknowledges that the Fifth Arbitration is not a consumer arbitration, and asserts that it is not relying on Ethics Standard 8 here.  However, it relies on *Gray*, which held that a superior court erred in denying a section 1286.2 petition to vacate an arbitration award where the arbitrator failed to comply with Ethics Standard 8.  (See *Gray*, *supra*, 212 Cal.App.4th at pp. 1364-1366.)  New England asserts that *Gray* stands for the broader proposition that disclosure of the DRPO-attorney relationship required by Ethics Standard 8 is also required under section 1281.9, subdivision (a)(1), the catchall provision requiring disclosure of all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed arbitrator would be able to be impartial.  New England specifically points to a footnote in *Gray* stating that a reasonable person could doubt the ability of the arbitrator to be impartial where he and an attorney in the matter belonged to the same DRPO, knew of one

---

the 'consumer party was required to accept the arbitration provision in the contract.'" (*Gray v. Chiu* (2013) 212 Cal.App.4th 1355, 1363 fn. 4, quoting Ethics Standard 2(d)(3).)

another's affiliation prior to the arbitration, and worked from the same office where photographs of the DRPO's arbitrators were displayed. (See *Gray*, *supra*, 212 Cal.App.4th at pp. 1360, 1364, fn. 5.)

This broad reading of *Gray* does not square with the explicit proviso in Ethics Standard 8(a)(2) that the disclosures required by Ethics Standard 8 are not required unless the arbitration is a consumer arbitration. Even if *Gray* bore the weight New England seeks to place upon it, New England did not allege facts nearly as egregious as those summarized in the footnote. There are no allegations in the complaint that O'Brien and the arbitrators knew one another, shared an office, or even saw one another prior to the arbitration. The disclosure of their shared affiliation with AAA was thus not required unless, "under the specific facts and circumstances of the case, the information could reasonably raise a doubt in a person aware of the facts and about the arbitrator's impartiality." (*Speier*, *supra* 63 Cal.App.5th at pp. 149-150.) This standard is an objective one (*id.* at pp. 147-148), and "'[a]n impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased *for or against a party for a particular reason.*'" (*Haworth*, *supra*, 50 Cal.4th at p. 389.) Here, although New England alleges the arbitrators were biased, it also alleges that the arbitrators' rulings and interim awards have been mixed, with some favoring the Cooner entities and others favoring New England. An objective observer would not reasonably entertain a doubt about the arbitrators' impartiality.

### b. Delay in Seeking Relief

Even if disclosures were required, New England's delay in requesting them provides an alternative basis for affirming the

31

ruling. *Advantage Medical* is instructive. There, Hoffman sought to obtain additional disclosures and disqualify the arbitrator shortly after learning that he and his firm had a connection to Lloyd's of London.  Here, New England explicitly alleges that O'Brien "offhandedly indicated in an early colloquy with the Panel that he had previously stood in their shoes as a AAA arbitrator or been a speaker at the AAA's request."  Rather than seek further disclosures from or disqualification of the arbitrators at that time, New England waited an additional six years to raise the issue.  "If a party learns the arbitrator failed to disclose information relevant to disqualification, the party must object 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.' (§ 170.3, subd. (c)(1).)  'While failure to disclose properly a ground for disqualification generally mandates vacation of the award, this rule only applies if the party moving to vacate "had no reason to know of the existence of a nondisclosed matter." [Citation.]  If a party is "aware that a disclosure is incomplete or otherwise fails to meet the statutory disclosure requirements," the party "cannot passively reserve the issue for consideration after the arbitration has concluded."' [Citation.]" (*Alper v. Rotella* (2021) 63 Cal.App.5th 1142, 1152-1153; see also *Goodwin v. Comerica Bank, N.A.* (2021) 72 Cal.App.5th 858, 870 (*Goodwin*).)[7]  New England pleads its awareness in the complaint.

_____

[7]      Both New England and Cooner Sales relied on *Goodwin* during oral argument.  Although *Goodwin* supports the proposition that section 1281.91, subdivision (d) extends the time to seek disqualification beyond a hearing on any contested issue of fact where "any ground specified in Section 170.1 exists" (see *Goodwin, supra,* 72 Cal.App.5th at p. 869), it also holds that a

In its briefing and during oral argument, New England suggested it was excused from acting in 2015 because O'Brien's comments suggested only a previous affiliation with AAA, not a current one. However, "[c]ourts have also held that if the arbitrator disclosed information or a party had actual knowledge of information putting the party on notice of a ground for disqualification, yet the party failed to inquire further, the arbitrator's failure to provide additional information regarding the same matter does not justify vacating the award." (*Mt. Holyoke Homes, L.P. v. Jeffer Mangels Butler & Mitchell, LLP* (2013) 219 Cal.App.4th 1299, 1314.) Here, New England alleges actual knowledge of at least a potential conflict of interest involving O'Brien as early as 2015. Its delay in raising concerns precludes it from demonstrating the likelihood of prevailing on the merits necessary to support injunctive relief under section 1281.8.

For all these reasons, the superior court properly sustained the demurrers to the first and second causes of action. New England asserts that it "should be allowed to take discovery and amend its complaint to allege additional facts about O'Brien's undisclosed, extensive AAA relationships for the nearly five years he was Cooner [Sales]'s lead counsel in the arbitration," but it gives no indication what its additional allegations may be or how they may cure the defects in its claims. We thus are unable to conclude the court abused its discretion by denying leave to amend. (*See Moore v. Centrelake Medical Group Inc.* (2022) 83 Cal.App.5th 515, 537.

---

party is "required to 'object "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification[.]"'" (*Id.* at p. 870.)

## C. Remaining Causes of Action
### 1. Third Cause of Action

The superior court also sustained respondents' demurrers to the third, fourth, and fifth causes of action. In the third cause of action, New England alleged that AAA's business model (including its "secret roster" and policies of not disclosing when counsel belongs to AAA and requiring pledges of support) and advertising campaigns touting transparency were unfair, false, and misleading, in violation of the UCL.  The superior court sustained AAA's demurrer to this cause of action on the grounds that it was "derivative of the first and second causes of action." New England contends it stated a valid UCL claim.  It highlights AAA's alleged policy of not disclosing "when a party is represented in AAA arbitrations by a lawyer who is an AAA arbitrator," which it asserts is unlawful because it violates sections 170.1, subd. (a)(6)(A)(iii) and 1281.9, subdivision (a)(1), both of which require disqualification of an arbitrator where a person aware of the facts might reasonably entertain a doubt as to an arbitrator's impartiality.  New England adds that parties to AAA arbitrations might entertain such doubt if "an adverse party's lawyer is an active AAA arbitrator and may also accept AAA matters during arbitration," or if they knew "the lawyer and arbitrator had pledged to always promote AAA."

The UCL broadly defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  (Bus. & Prof. Code, § 17200.)  For instance, a business practice may be "unfair" under the UCL even if not prohibited by other law. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th

34

1134, 1143.) "While the scope of conduct covered by the UCL is broad, its remedies are limited. [Citation.] A UCL action is equitable in nature; damages cannot be recovered." (*Id.* at p. 144.) Plaintiffs are generally limited to restitution or injunctive relief. (*Ibid.*) New England requests the latter here, specifically preliminary and permanent injunctions staying the arbitration proceedings, enjoining the arbitrators and AAA from continuing to engage in the alleged disclosure and disqualification violations, and enjoining the arbitrators and AAA from proceeding further with the arbitration.

Though there is considerable overlap between the allegations of the UCL claim and those made elsewhere in the complaint, it is a stretch to deem the UCL claim wholly derivative of the others. The claim here rests on at least some allegations outside its other causes of action—in particular, its allegations about AAA's allegedly false advertising of case management services. (*Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 896 [UCL claim is wholly derivative where it is based solely on allegations of other claims].) Presumably cognizant of this, New England and AAA both address another basis on which AAA demurred to the cause of action: arbitral immunity.

Arbitral immunity shields arbitrators from "'court actions for their activities in arriving at their award.'" (*Stasz v. Schwab* (2004) 121 Cal.App.4th 420, 430 (*Stasz*).) The doctrine is well established in California. (*Ibid.*) "The application of arbitral immunity does not turn on whether the act is discretionary instead of ministerial or administrative." (*Id.* at p. 431.) Instead, it shields all functions that are integrally related to the arbitral process, even where arbitrators fail to exercise proper care, skill,

35

or impartiality in their performance of arbitral functions.[8] (*Id.* at pp. 431, 438.)  Arbitral immunity extends "to organizations that sponsor arbitrations, like the AAA." (*Id.* at p. 433.)

New England contends its third cause of action cannot be subject to arbitral immunity because arbitral immunity only shields arbitrators and DRPOs from liability for damages, and UCL claims can only seek equitable relief.  AAA responds it is entitled to arbitral immunity.  It cites *La Serena Properties, LLC v. Weisbach* (2010) 186 Cal.App.4th 893 (*La Serena*), which we find materially indistinguishable from the instant case.

In *La Serena*, parties to an arbitration administered by AAA sued the arbitrator and the AAA "alleging five separate causes of action, all of which arise out of the alleged failure of arbitrator Weisbach to disclose a certain conflict of interest during the appointment process"—a romantic relationship with the sibling of an attorney representing the party opposing plaintiffs. (*La Serena*, *supra*, 186 Cal.App.4th at p. 896, 897.) The plaintiffs sought "damages, as well as other relief"; their causes of action included a UCL claim alleging false advertising. (*Id.* at pp. 896, 899-900.)  Weisbach and the AAA both filed demurrers contending that the suit was barred by arbitral immunity for quasi-judicial acts. (*Id.* at p. 900.)  The superior court agreed and sustained the demurrers without leave to amend. (*Ibid.*)

The appellate court affirmed.  It concluded there was "no doubt that the alleged failure to make adequate disclosures of potential conflicts of interest falls within the scope of the absolute

---

[8]    *Stasz* reiterates that the "remedy for arbitrator bias or misconduct is a civil action seeking to vacate the arbitration award." (*Stasz*, *supra*, 121 Cal.App.4th at p. 438.)

immunity for quasi-judicial acts." (*Id*. at p. 903.) The court rejected the plaintiffs' contention that arbitral immunity did not reach their claims for "conspiracy to commit fraud while soliciting arbitration business." (*Id*. at pp. 905-906.) It emphasized that "the gravamen of [plaintiffs'] claims against Weisbach and AAA relates to the failure to disclose a proposed relationship with a party that was required to be disclosed," and concluded that "creative pleading" could not circumvent the doctrine. (*Id*. at p. 906.) Notably, the court found support in an analogous case holding that plaintiffs could not evade the litigation privilege "by trying to frame a derivative cause of action for violating the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.)." (*Ibid*.) The court held the "alleged claims of misconduct, no matter how pleaded, all arise out of the conflict of interest disclosure procedure that is integrally part of the arbitration process" and affirmed the judgment in full, even as to the UCL claim. (*Id*. at pp. 896-897.)

New England argues *La Serena* is distinguishable because it involved claims for damages in addition to those seeking equitable relief. We are not persuaded. Nothing in the reasoning of *La Serena* depends on a distinction between claims for monetary damages (which, in any event, are not an available remedy under the UCL) and claims for equitable relief. Much like *La Serena*, the gravamen of New England's UCL claim is a challenge to the arbitration's disclosure process. The claim concerns the arbitrators' and AAA's failure to disclose any information about O'Brien, and even the bulk of the advertising allegations concern representations about disclosure and transparency. The remedy that New England seeks is, in part, an injunction enjoining the ongoing arbitration. That its UCL

37

claim seeks injunctive relief does not alter the fact that New England hopes to use the UCL to impose collateral liability on AAA based upon AAA's conduct of functions integral to the process of an arbitration in which New England is a party—precisely what arbitral immunity forbids. The other authorities on which New England relies do not involve efforts by arbitration parties to interfere with the arbitration process, and do not address the concerns raised in *La Serena*. In addition, those authorities are largely federal, and at least one is unpublished. None is as analogous or persuasive as *La Serena*, which we follow here in light of the circumstances of this case.

New England has not demonstrated how it would amend the third cause of action to avoid arbitral immunity. Therefore, we decline to find the superior court abused its discretion by denying leave to amend.

### 2. Fourth Cause of Action

New England does not make any substantive arguments regarding the fourth cause of action, which sought equitable severance of any portion of the Cooner Sales operating agreement that required the use of AAA as a DRPO, in its opening brief. New England mentions the fourth cause of action in a footnote of its reply brief, asserting that the facts giving rise to a reasonable doubt as to the arbitrators' impartiality "also support [New England's] fourth claim to sever such requirement." This belated and terse allusion to the fourth cause of action does little to demonstrate the court erred in sustaining the demurrer without leave to amend. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument

and citations to authority, we treat the point as waived."].)  We accordingly find no basis to disturb that ruling.

### 3.    Fifth Cause of Action

With regard to the fifth cause of action for declaratory relief, New England contends it adequately alleged the "actual controversy relating to the legal rights and duties of the respective parties" required by section 1060.  It further asserts that "AAA's disqualification would not be determined in the arbitration between the parties, and could not be duplicative."

"Where a trial court has concluded the plaintiff did not state sufficient facts to support a statutory claim and therefore sustained a demurrer as to that claim, a demurrer is also properly sustained as to a claim for declaratory relief which is 'wholly derivative' of the statutory claim."  (*Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800; see also § 1061 ["The court may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."].)  The fifth cause of action seeks a declaratory judgment providing, among other things, "Plaintiffs' interpretation of the Panel members' investigation, disclosure, and disqualification obligation is correct;" "Given the facts of this case, a person might reasonably entertain a doubt that the arbitrators could be impartial"; "The Panel members violated their duties of investigation, disclosure, and disqualification under applicable law"; "New England has no adequate remedy at law . . ."; "The Panel members are disqualified as arbitrators in the Fifth Arbitration"; "All interim awards issued by the Panel are set aside"; "The AAA's refusal to order the Panel members to supplement their disclosures and disqualify themselves

constitutes wrongful conduct"; and "The AAA's wrongful conduct entitles New England to all the provisional remedies [and injunctive relief] it seeks in its Complaint." These requests are virtually identical to the allegations and demands made in the first and second causes of action. The superior court accordingly properly sustained the demurrer to the fifth cause of action without leave to amend.

## II. Motion to Disqualify Counsel

New England contends the superior court erred by declining to address its motion to disqualify Cooner Sales's counsel. It further contends it should not need to "re-raise" the issue of disqualification with the arbitrators, because they already disqualified Richmond in 2015, and the disqualification of Richmond's new firm, Larson LLP, should be automatic and unwaivable by consent or ethical screening. New England also asserts it has standing to seek disqualification, and did so promptly. We need only address its first contention, which we reject.

It is "well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967.) These inherent powers permit superior courts to exercise reasonable control over all proceedings connected with pending litigation, including rules of procedure, to ensure the orderly administration of justice. (*Ibid.*) The Legislature also has recognized and codified this authority, which encompasses the ability to disqualify an attorney. (*Ibid.*; § 128, subd. (a)(5); see *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 8, 9 (*Cal Pak*).)

The exercise of these inherent and statutory powers is a matter vested within the sound discretion of the superior court, and is subject to review under the abuse of discretion standard. (See *Schimmel v. Levin* (2011) 195 Cal.App.4th 81, 87 (*Schimmel*).)  The court's discretion is not boundless, however; it is limited by applicable legal principles, and its rulings may be reversed if they lack a reasonable basis.  (*Cal Pak, supra*, 52 Cal.App.4th at p. 9.)

New England cites federal authority holding that "a district court must reach the merits of a disqualification motion before ruling on a dispositive motion." (*Bowers v. Ophthalmology Group* (6th Cir. 2013) 733 F.3d 647, 654-655; see also *Grimes v. District of Columbia* (D.C. Cir. 2015) 794 F.3d 83, 90 ["Once a party moves to disqualify an adverse party's counsel, the district court may not entertain a dispositive motion filed by the very counsel alleged to be conflicted until the court has first determined whether that counsel is disqualified."].)  Federal appellate court decisions are not binding on this court, though we may consider their persuasive value.  (*People v. Brooks* (2017) 3 Cal.5th 1, 90.)

New England also cites as "instructive" three Court of Appeal cases: *Schimmel, supra*, 195 Cal.App.4th at pp. 87-88, *Cal Pak, supra*, 52 Cal.App.4th at pp. 7-10, and *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113 (*Jarvis*).  None of these cases holds that a court must rule on a disqualification motion before ruling on a dispositive motion.

In *Schimmel*, the appellate court concluded the superior court did not abuse its discretion by resolving a motion to disqualify prior to ruling upon a petition to compel arbitration filed by the challenged attorney.  (See *Schimmel, supra*, 195 Cal.App.4th at pp. 86-88.)  The appellant contended that the

41

superior court should have granted the petition, then stayed the action to permit the arbitrator to resolve the remaining motions, including the motion to disqualify. (*Id.* at p. 86.) The appellate court rejected this argument. Relying on section 128, subdivision (a)(5), it held that the superior court "possesses the power to control judicial proceedings in the furtherance of justice," and did not abuse that discretion by resolving the motions in the order it did. (*Id.* at p. 87.)

In *Cal Pak*, the superior court disqualified Cal Pak's counsel after he "admitted he had offered to sell out his client and the class which the client was seeking to represent for a payment to himself personally of approximately $8 to $10 million." (*Cal Pak, supra,* 52 Cal.App.4th at pp. 5-6.) On the same day, the superior court sustained a demurrer to Cal Pak's complaint without leave to amend; the appellate court "observe[d] that it is unclear whether the grant of the demurrer in this action preceded or followed the disqualification ruling." (*Id.* at pp. 7, 9.) The appellate court nevertheless rejected counsel's argument that the superior court lacked jurisdiction to disqualify him after it had sustained the demurrer and dismissed the case. (*Id.* at p. 9.) As in *Schimmel*, the appellate court emphasized the superior court's inherent power to control the proceedings before it. (*Ibid.*)

In *Jarvis*, brothers Todd and James each controlled a 50 percent interest of a limited partnership that owned a parcel of land. (*Jarvis, supra,* 33 Cal.App.5th at p. 120.) James filed an action for partition of the land by sale, naming Todd and the partnership as defendants. Todd and the partnership each filed demurrers to the complaint. While the demurrers were pending, James moved to disqualify Roscoe, the counsel representing the partnership. (*Id.* at pp. 120-121.) The superior court heard the

42

demurrers and the motion to disqualify at the same time. (*Id.* at p. 127.) It granted the motion to disqualify Roscoe and dismissed the demurrer he had filed on behalf of the partnership without prejudice. (*Ibid.*) The appellate court affirmed; like the courts in *Schimmel* and *Cal Pak*, it emphasized the superior court's inherent power to control the proceedings before it before reaching the merits of the motion. (See *id.* at pp. 128, 133-140.)

New England argues that these cases collectively demonstrate "(1) a trial court should decide a motion to disqualify counsel before deciding other issues, (2) if the trial court disqualifies an attorney, the motions filed by that attorney should be stricken, and (3) the trial court does not lose jurisdiction over a motion to disqualify counsel even when it first decides a dispositive motion and dismisses a case. Thus, the trial court here should have ruled on [New England's] motion to disqualify Larson and, after determining that Larson *had already been* disqualified, should have stricken the Cooner [Sales] demurrer papers filed by his firm."

As New England acknowledged below, no California authority, including those cited here, holds that courts *must* address motions to disqualify before addressing other motions. *Schimmel*, *Cal Pak*, and *Jarvis* all highlighted superior courts' inherent powers to manage the proceedings before them. The court here invoked the same powers, and considered "the specific facts of this case," including "gamesmanship" by New England, when deciding to resolve the demurrers prior to the motion to disqualify. New England has not demonstrated that this considered exercise of discretion was beyond the bounds of reason. We accordingly affirm the court's denial of the motion as moot.

43

## DISPOSITION

The judgment is affirmed.  Respondents may recover their costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


CURREY, ACTING, P.J.


DAUM, J.*

---

*     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.